# FRANK BELZ
## v.
## GRETCHEN BELZ.

*Divorce—Desertion—Summons—Service of Default—Collusion.*

This court affirms a decree dismissing a bill for divorce, upon the ground of collusion.

[Opinion filed May 8, 1889.]

APPEAL from the Circuit Court of Cook County; the Hon. OLIVER H. HORTON, Judge, presiding.

Messrs. GOLDZIER & RODGERS, for appellant.

No appearance for appellee.

GARNETT, P. J.　The bill for divorce in this case was filed by appellant against appellee on the 15th day of December, 1888, and alleged, as ground for the relief prayed, that the defendant deserted complainant on March 24, 1885, and had ever since that time, without cause or provocation, refused to live with him.　The summons was issued and served the same day on the defendant while she was in the office of the solicitor who filed the bill.　On the same day she, by a writing signed by her, authorized another solicitor to appear in the cause for her, waive her right to answer the bill and consent to a default. That paper was filed in the cause on the 18th day of December, 1888, and at the same time the solicitor, so authorized, entered her appearance, waived her right to answer and consented to a default.　In pursuance of the consent so given, the bill was taken as confessed by the defendant on the day last named.　The cause came on to be heard January 5, 1889, on proofs produced in behalf of the complainant only.　It appeared from the testimony of complainant, that about three weeks before the hearing, he and defendant had an interview, and he told her he had filed a bill for divorce, to which she replied "all right."　The judge by whom the case was heard interrogated him, and he answered as follows:

Q.　"Did your lawyers tell you anything about your wife's entering her appearance in this case?"

A.　"No, sir; I didn't know that she did."

Q.　"Did he tell you that she signed that paper?"

A.　"Yes, sir."

Q.　"He told you about that, did he?"

A.　"Yes, sir."

Q.　"Did he tell you how he got it?"

A.　"Yes, sir."

Q.　"What did he say?"

A.　"He said that my wife had spoken to him about it."

Q.　"What did he say she said?"

A.　"That she had spoken to him about it.　He told me that my wife said that she wanted her divorce from me."

The judge called the complainant's solicitor as a witness, and from his testimony, it appeared that before the filing of

Belz v. Belz.

the bill in this case, appellee applied to him and requested him to secure a divorce for her, at the same time presenting a paper signed by her husband authorizing her to get a divorce. After hearing her statement he told her that she could not get a divorce, as she had no ground for it, and if there was to be a separation, her husband would have to ask for it. Proceeding, the witness said: "She then sent her husband to me. I had a talk with her husband, and found that he had good grounds for a divorce, and, consequently, I filed the bill for a divorce for him. * * * I don't really know whether I sent for her, or whether she came of her own accord." The court dismissed the bill, the order being in form the usual order dismissing for want of equity. The real ground, however, for the action of the court, was the apparent collusion between the comp'ainant and defendant. The first arrangement they entered into was that the wife should file the bill, and the husband, so far as he could make the proceedings effectual, sought to accomplish the desired end by giving her written authority for that purpose. Why the wife was chosen as the moving party when she had, as now claimed, no cause of complaint, is known only to the persons interested. So long as she was intended as the ostensible complainant, they were evidently of one mind, both actually seeking the same end. The change of front which made him take the place was not followed by any adverse action on her part, or even by merely passive acquiescence. She directed him to the solicitor's office. She was served with process in the office of the same solicitor on the day the bill was filed, and was probably waiting there for that purpose. She immediately executed a written authority for the entry of her appearance, and for an immediate default by consent.

In the usual course the default could not have been taken until the 23d of January, but by the accommodating assistance of the defendant the cause was actually heard eighteen days earlier than that. We are of opinion that the evidence warranted the court in finding that there was collusion or conspiracy between the complainant and defendant for the purpose of procuring a divorce. In such cases the law conclu-

sively presumes that a good defense might have been presented, if there had been no collusive action. What proof was made as to the fact of desertion, was of no consequence. Desertion is sometimes justified under the law, and is often made to appear as desertion when, in fact, the separation was by agreement. But it is needless to speculate as to what defense could have been shown, as the wise policy of the law denies relief where collusion is proven.

In his work on Marriage and Divorce, Sec. 28a, Bishop says: "Collusion is equally possible in a good case, though it is less frequently practiced, the temptation being wanting. For, however just a cause in itself may be, if parties corruptly collude in the management of it before the tribunal, so that in reality both are plaintiffs, while by the record the one appears as plaintiff, and the other as defendant, this, in reason, and it is believed also in authority, will, as collusion, bar the proceeding."

Hamilton v. Hamilton, 89 Ill. 349, was a suit in assumpsit brought by a divorced wife against her former husband, on a contract made between them pending a suit by her against him for divorce. By the terms of the contract he agreed to give her a certain farm and $500 in addition, and in consideration thereof she agreed to unite with him in the conveyance of all of his other real estate, waiving her homestead and dower rights; she further agreed to dissolve the injunction issued against him in the divorce suit, and to dismiss her claim for alimony in that suit. The court said that the contract was "in its essence and character against public policy, and that it must be held invalid upon that ground. While divorces are authorized by law, they ought not to be encouraged. In this contract there is no express agreement that the husband would not resist the application for a divorce or that he would consent to a divorce, still it is thought that to permit such a contract as this to be enforced in the courts, would open the door for the attainment of divorces by collusion." If that contract had been brought to the notice of the court on the hearing of the divorce suit between those parties, and no other proof made on the subject of collusion,

what would have been the duty of the court?  A dismissal of the bill would necessarily have followed.

A similar case is Danforth v. Danforth, 105 Ill. 603, where the court said: " It is conceded and such is the unquestioned law, that if there is an agreement in a divorce case that the defendant will not defend against a decree, or the parties collude to obtain a divorce, or so as to produce that result, the relief will not be granted.  It is upon the principle that the parties do not have the only interest, but the public also has an interest in the marriage relation and in its proper maintenance; and the courts have ever been vigilant in preventing divorces from being obtained by fraud or collusion of the parties.  *  *  *  The effect of this agreement must have been precisely the same as had appellant and appellee agreed that she would do nothing to prevent him from obtaining a divorce, and, if necessary, she would assist for the purpose.  It is not the mere form of words, but it is the intent—the thing or purpose intended to be accomplished—that constitutes the agreement, when that can be determined from the instrument itself."  The principle of these decisions is applicable to the case at bar.  There was here a common design followed up by both parties with the intent that the desired result should be produced in one way or another.  We have neither the disposition nor the right to depart from this settled rule.  The decree of the Circuit Court is affirmed.

*Decree affirmed.*