CAREY *et al. v.* HOUSTON & T. C. RY. Co. *et al.*

*(Circuit Court, E. D. Texas.* November 12, 1892.)

1. FEDERAL COURTS—JURISDICTION—RAILROAD FORECLOSURE—RECEIVERS.
   A federal court having jurisdiction and possession, through its receiver, of all the property of a railroad company, thereby acquires jurisdiction of a subsequent suit to foreclose a mortgage on the same property, irrespective of the citizenship of the parties thereto, and may enter therein a binding decree of foreclosure and sale. *Morgan's L. & T. R. & S. S. Co.* v. *Texas Cent. Ry. Co.*, 11 Sup. Ct. Rep. 61, 137 U. S. 171, followed.

2. JUDGMENT—VACATING CONSENT DECREE—RAILROAD FORECLOSURE.
   A decree of foreclosure and sale of a railroad, entered by consent of the creditors and the company, without fraud, in pursuance of a plan of reorganization, will not be set aside at the suit of some of the stockholders merely because the principal of one mortgage was not yet due, when it appears that the sums due for interest thereon, for floating indebtedness, and on other mortgages, then due, were so great as to render foreclosure inevitable, and in that case to deprive the stockholders of all their equity in the property; especially when complainants do not offer to do equity by paying the floating debt, and have not been diligent in opposing the plan of reorganization, or in attacking the decree complained of.

In Equity. Bill by S. W. Carey and others, stockholders in the Houston & Texas Central Railway Company, against the company and various other parties, to set aside a foreclosure decree entered by consent in pursuance of a plan to reorganize the company, and to enjoin the carrying out of the scheme of reorganization. A motion for an injunction *pendente lite* was denied. 45 Fed. Rep. 438. Bill dismissed.

*R. H. Landale* and *Jefferson Chandler*, for complainants.

*Butler, Stillman & Hubbard, A. H. Joline,* and *Farrar, Jonas & Kruttschnitt,* for defendants.

PARDEE, Circuit Judge. This cause was before the court in the first instance on a motion for an injunction *pendente lite.* The motion was denied for reasons given at some length. 45 Fed. Rep. 438. Both parties having taken such evidence as suited, the cause now comes on for final hearing on the proofs, which change very little the aspect of the case as presented by the pleadings. It has been most thoroughly and exhaustively argued on both sides, both orally and by brief; the discussion ranging over a wide field, covering many propositions of law and equity and of equity practice. Were it at all likely that the present decision would be taken as a finality in the case, I should be disposed to take up *seriatim* the questions as presented by counsel, and discuss them as elaborately and, perhaps, at as great length, as counsel have argued the same in their printed briefs. Under the circumstances, however, I do not deem it necessary to further incumber the record with my conclusions in the case beyond adding a little to what was said in denying the motion for a preliminary injunction.

Whether the bill of complaint herein is an original one in the nature of a bill of review attacking a former decree of the court, or is a bill of complaint in continuation of a former suit, or is an original bill to set aside a decree of foreclosure and sale and a sale thereunder, it seems to

me that, if the court was fully seised of jurisdiction in the suit in which the decree attacked was rendered, and the proofs under the present bill do not establish collusion and fraud in the proceedings to the injury of the present complainants, complainants' bill should fail.

1. As to jurisdiction of the court in the suit in which the decree of foreclosure and sale attacked was rendered: On the 11th day of February, 1885, Nelson S. Easton and James Rintoul, citizens and residents of the state of New York, claiming to be trustees under a certain deed of trust granted by the Houston & Texas Central Railway Company on the 1st day of July, 1866, covering the main line of the Houston & Texas Central Railway, filed their bill—No. 183 of the docket—in the circuit court for the eastern district of Texas against the Houston & Texas Central Railway Company to enforce and protect the trust property, wherein they prayed for an account, for an injunction, for a decree of sale of part of the trust property, and for a modified receivership. On the same day the same complainants filed in the same court another bill against the Houston & Texas Central Railway Company—No. 184 of the docket—to enforce and protect a trust provided and constituted by another deed of trust dated the 21st day of December, 1870, covering the Western Division of the Houston & Texas Central Railway, and all lands and real estate which then constituted, or might thereafter constitute, the said Western Division of the Houston & Texas Central Railway; and therein, on the facts alleged in the bill, prayed for an account, for an injunction, for a decree of sale of part of the trust property, and for a modified receivership. The records show that under these two bills service was had, the court took jurisdiction of the trust property, and made divers orders in relation to the management and disposition of the same. On the 16th of February, 1885, the Southern Development Company, a body corporate under the laws of the state of California, and a resident of that state, in its own behalf and on behalf of all other persons similarly situated, filed its bill of complaint—No. 185 of the docket—in the circuit court of the United States for the eastern district of Texas against the Houston & Texas Central Railway Company, therein averring, among other things, that it was a creditor of the said railway company for large sums of money advanced at various times for supplies, labor, repairs, operating and managing expenses, proper equipment for use and improvement, and other necessary expenses, in amount exceeding $600,000; that the said indebtedness was contracted by the railway company in consideration of its promise to pay the same out of the earnings of its railway; that the said indebtedness was in equity and good conscience a charge upon the income and property of the said railway; that there had been a diversion of the income of the railway to pay interest on the bonded debt; that by said diversion a lien resulted in favor of the complainant, which complainant was entitled to have enforced in a court of equity. Said bill also set forth many other facts, particularly the absolutely insolvent condition of the railway company, tending to show the right to the relief prayed for, which was for an accounting, the appointment of receivers to take possession of

and operate the railway property, and for a decree for the payment of complainant's claims out of the earnings of the property. To this bill the Houston & Texas Central Railway Company appeared, and filed an answer, and thereafter, upon notice to the defendant, the court took full jurisdiction of the case, appointing receivers for all the property, real and personal, of the Houston & Texas Central Railway, and fully taking the same into the possession of the court.

Thereafter, on the 12th day of March, 1885, the Farmers' Loan & Trust Company, a corporation created by and under the laws of the state of New York, and a citizen of said state, brought its bill of complaint against the Houston & Texas Central Railway Company,—No. 188 of the docket,—therein alleging that complainant was trustee under several mortgages or deeds of trust as follows: A mortgage or deed of trust, dated June 16, 1873, covering the Waco & Northwestern Division, and also 6,000 acres of land per mile of completed road; a mortgage or deed of trust, dated October 1, 1872, covering the main line and the Western Division of the Houston & Texas Central Railway, and also 3,840 acres per mile of completed road; a mortgage or deed of trust, dated May 1, 1875, covering the Waco & Northwestern Division, and 6,000 acres of land per mile of completed road; a mortgage, dated May 7, 1887, to secure a series of bonds due May 1, 1887, covering all the lines of the said railway, and all its lands and land grants; a mortgage, dated April 1, 1881, covering all the lines of said railway and 10,240 acres of land per mile for each mile of completed road on all the lines of said railway company; also all of its town lots. The bill averred the violation on the part of the railway company of many of its agreements in relation to the trust property; the default of the company in the payment of interest; the insolvency of the company; the pendency of the preceding suits; the jeopardy of the trust property; and prayed for an accounting, a writ of injunction, a decree of sale of part of the trust property, and for a receiver of all and singular the rights, franchises, and property of every name and nature, including the rolling stock, goods, chattels, and things in action, including all lands, real estate, tenements, hereditaments, and all property of every sort and nature of the said defendant the Houston & Texas Central Railway Company, with power and full authority to operate said railroad and carry on all the business of said railway company under the protection of the court, with the usual powers of receivers and managers of railroads. In no one of the cases mentioned can there be any question as to the jurisdiction of the court, so far as the citizenship of the parties is concerned. Under these suits, the court was in full, complete possession, through its receivers, of all the property of the railway company.

In this state of the case, the same parties, Rintoul and Easton, trustees under the two several deeds of trust upon which suits Nos. 183 and 184 were based, then came into court January 21, 1886, and filed two other bills of complaint for the foreclosure and sale of all the railroad property covered by the said deeds of trust. To the bill for the foreclosure of the mortgage on the main line, complainants made the Hous-

v.52F.no.8—43

ton & Texas Central Railway Company and one Benjamin A. Shepard, a resident of Texas, defendants; and they alleged, as to the Farmers' Loan & Trust Company, and as facts upon which the jurisdiction of the court was invoked, as follows:

"And your orators further allege that the Farmers' Loan & Trust Company, as trustees under the said mortgage or deeds of trust hereinbefore described, will, as your orators believe, be benefited by, and it is to their advantage that the judgment and relief hereinafter prayed for, or some part thereof, should be granted to your orators. That said property covered by the said first mortgage on said main line, as well as all the other property, assets, and effects of said railway company, being now in the hands of this court by the receivership existing in respect of the same, and your orators thereby being required by law to institute this action in this court, and to come before this tribunal, in order to reach the property in its possession, and to obtain its rights concerning the same, and all the parties interested in the property covered by said mortgage on the main line as well as on all ·the other mortgages and property of said railway company being now before the court in said actions hereinbefore described as Nos. 183, 184, 185, and 188, and on the equity docket of this court, the said Farmers' Loan & Trust Company may and should be made a party defendant in this cause, irrespective of its citizenship; and said corporation should be brought in, as a defendant herein, by the order and direction of this court, and should be bound by the judgment and proceedings herein."

In the bill for the foreclosure of the mortgage covering the western division they made the same parties defendant, and the like averment as to the Farmers' Loan & Trust Company and the jurisdiction of the court. The facts alleged being true, and of record, the jurisdiction of the court to enter a decree of foreclosure and sale of the property covered by the mortgages described seems complete. In the case of *Morgan's L. & T. R. & S. S. Co.* v. *Texas Cent. Ry. Co.*, 137 U. S. 171, 11 Sup. Ct. Rep. 61, which was in most respects affecting jurisdiction similar to the case under consideration, differing only in the minor matter of the names given to the pleadings, the supreme court, after a discussion of cross bills and their nature, and after deciding that in that case the bill filed by the Farmers' Loan & Trust Company was correctly styled a "cross bill," said:

"And whether this bill be regarded as a pure cross bill, as an original bill in the nature of a cross bill, or as an original bill, there is no error calling for the disturbance of the decree, because the court proceeded upon 'it in connection with the other pleadings. The jurisdiction of the circuit court did not depend upon the citizenship of the parties, but on the subject-matter of the litigation. The property was in the actual possession of that court, and this drew to it the right to decide upon the conflicting claims to its ultimate possession and control."

Citing *Minnesota Co.* v. *St. Paul Co.*, 2 Wall. 609; *Bank* v. *Calhoun*, 102 U. S. 256; *Krippendorf* v. *Hyde*, 110 U. S. 276, 4 Sup. Ct. Rep. 27.

2. The record and proofs do not show that the decree complained of was affected with collusion or fraud to the prejudice of the complainants. In the first place, the complainants, as stockholders, have not been injured by the decree and sale thereunder, but rather benefited. Before the decree, their interest as stockholders was subject to many millions

of bonded indebtedness, bearing a high rate of interest, and to the payment of a vast floating debt. The result of the sale and the reorganization thereunder is that, without increasing the amount, the interest upon the bonded debt has been largely reduced, long-time bonds substituted, and the amount of the floating indebtedness is not increased. Complainants contend that the decree complained of was a consent decree, obtained by collusion between the creditors of the company and the Southern Pacific Company, by which the defendant railroad company was precluded from making proper defenses to the suits for foreclosure. This contention is not borne out by the proofs. The answers of the railway company were not withdrawn. Testimony in the suit was taken; in fact, the record teemed with evidence in the nature of admissions by all the parties, tending to show the justice of the creditors' demands, and the fact that the railroad company had no meritorious defenses. The vast amount of floating indebtedness was not, and could not be, denied. The insolvency of the company, and its utter inability to pay its just debts, and maintain the property as a going concern, was admitted on all hands, and could not have been truthfully denied. The sale and reorganization of the property was considered essential in the interest of all concerned. The question of whether or not the principal of the bonds secured by the first main line and western division mortgage was or had become due because of the defaults of the company, and its general failure to comply with its agreements, was, it is true, an issuable fact; but at the same time it was a fact of minor importance, because a sale of the property was necessary on account of the defaults of the company in the payment of interest upon its other bonds secured by mortgages, upon which it was undoubted the principal had become due, and because of the large admitted floating debt pressing for payment. It was of little interest to the stockholders of the Houston & Texas Central Railway Company (who, so far as the record shows, never proposed to pay anything) whether the principal of the first main line and western division mortgages was declared due or not, when the interest thereon past due was in amount far beyond the ability of the company to meet, and for which a foreclosure was inevitable; and which, with the foreclosures under the subsequent mortgages for principal and interest conceded to be due, would have extinguished every interest the stockholders possessed. Nor do the proofs of the case at all satisfy me that there was any collusion. "'Collusion' is an agreement between two or more persons unlawfully to defraud a person of his rights by the forms of law, or to obtain an object forbidden by law." Bouv. Law Dict. "'Collusion' is where two persons apparently in a hostile position, or having conflicting interests, by arrangement do some act in order to injure a third person, or deceive a court." Rap. & L. Law Dict. This case nowhere shows any agreement between any persons, either express or implied, to defraud any one, to deceive any court, or that any one has been defrauded, or any court deceived. Beyond this, the complainants have wholly failed to show that the complainants in the foreclosure suits were cognizant of any misconduct on the part of the defendant, its coun-

sel, or its directors, or that they insisted upon, or were parties to, any agreement by which the interests of the defendant company or its stockholders were really aggrieved.

It may be further noticed in this case that the proofs made do not show such diligence on the part of the complainants as gives them the right to attack, at this time, the decree of sale, the sale thereunder, and the organization agreement. In this connection, what was said by Mr. Justice PATTERSON of the New York supreme court, in his opinion in the *Gernsheim Case*, (Sup.) 7 N. Y. Supp. 878, on the identical facts, is very apropos:

"Manifestly, if the reconstruction were carried out in good faith, and the rights of the stockholders were protected and preserved, they would have been benefited by the cutting down of interest and fixed charges; and it is not at all a gratuitous assumption that all stockholders would have willingly acquiesced in the reconstruction agreement, provided it was carried out in good faith, and without any effort to destroy their interest in such stockholders. It seems to me that it is the result, and not the method, which has induced the assault upon the proceedings antedating the levying of the assessment on the stockholders. The reconstruction agreement was made on December 20, 1887. This suit [the Gernsheim suit] was not brought until September, 1889. It is nowhere explained in the moving papers why these plaintiffs remained quiescent for nearly two years without making any demonstration against the reconstruction agreement, or the proceedings in the United States court, which eventuated in the decree of foreclosure, (except as above stated;) and it is almost apparent that they were willing to take their chances under that agreement, and to acquiesce in all the proceedings that were had pursuant to it, until they ascertained that the heavy assessment of 73 per cent., of which they complained, was levied upon them to enable them to take stock in the new corporation."

It is hardly necessary to notice that the complainants do not offer to do equity, and pay into the court the amount of the debt of the defendant company which they concede to be due, or any of the expenses of foreclosure; nor that the relief they ask under their bill, if granted, would not only be valueless to them and other stockholders, but would saddle the company with a vast debt of nearly $25,000,000, wholly due, and bearing a high rate of interest. In my opinion, the complainants' bill should be dismissed, with costs, and a decree to that effect will be entered.