## J. M. PETWAY v. HENRY HOOVER.

Middle Section. January 31, 1931.

Manier & Crouch, of Nashville, for plaintiff in error.

H. C. Lassing, Seth M. Walker, and John J. Hooker, all of Nashville, for defendant in error, Hoover.

CROWNOVER, J. This is an action for damages for personal injuries received by the plaintiff, in an automobile collision, while riding as a guest in the defendant's automobile.

The action was tried by the judge and a jury, and resulted in a verdict for $3000 in favor of the plaintiff. Motion for a new trial having been overruled, defendant has appealed in error to this court and has assigned errors.

The plaintiff, Henry Hoover, and the defendant, J. M. Petway, were brothers-in-law, having married sisters. The two families maintained friendly relations with each other. They lived in the same block. They are on as friendly terms now as before this accident and litigation.

On the afternoon of August 9, 1929, Hoover and Petway went to the home of Hoover and drank a few bottles of home-brew. Some time later then went back to Petway's home and ate supper. Between 8:30 and 9 o'clock, Petway invited Hoover to take a trip with him in his automobile over to West Nashville, as Petway desired to see a man by the name of Hicks on business. Returning from West Nashville, at about 10:30, they traveled east on Broadway to First Avenue, then turned north on First Avenue. There is a railroad track on the west side of First Avenue from Broadway to within about fifty feet of Union Street. The width of First Avenue from the railroad track to the east curb is about thirty-five feet. There were several box cars standing on this track at about one hundred and fifty feet from Union Street. Petway was traveling north on First Avenue at the rate of about twenty miles an hour, when an automobile driven by Harry Humbrey approached, going south. There were no other automobiles in sight. Both automobiles had reached that part of the street where the box cars were located on the track. As the two cars approached each other, the Humbrey car was as near the box cars as was possible. The box cars were on Humbrey's right. Petway turned his car to the left. Then Humbrey slightly turned his car to the left in an effort to avoid Petway, but there was a head-on collision, on the west side of the street, on Petway's left, near the box cars. Hoover, who was sitting beside Petway, was thrown through the windshield. A deep gash, about five inches long, was cut in his neck. It extended from within an inch of his spinal column around his neck in an upward direction to his cheek, midway between his ear and mouth, and was about two inches deep in places. The muscles, nerves and

blood vessels in the side of his neck were severed, but his jugular vein was not cut. Petway rushed him to the hospital. He was unconscious and bleeding profusely. He was given immediate medical attention. He remained in the hospital fifteen days; when he was removed to his home, where he remained five weeks before he was able to return to work.

The permanent effects of the injury are that his right shoulder is about one inch lower than his left, he holds his head on one side, and cannot turn his head to the left.. His right shoulder-blade and right collar-bone are more prominent than the left. The muscles of the right shoulder are slightly atrophied as the result of the cutting of the nerves, and he has a bad scar and a sunken place on his neck.

After Hoover had been removed from the hospital to his home, he asked Petway to ask Mr. Lassing to come to see him. Mr. Lassing was a lawyer and worked in the County Court Clerk's office with Petway. Hoover sent for Lassing to discuss with him the bringing of a suit against Petway and the insurance company, as he knew that Petway had automobile liability insurance. Later this suit was brought by Hoover against Petway for injuries caused by Petway's negligence.

· There are some preliminary questions to be settled before we pass upon the assignments of errors. It is insisted by the plaintiff that the defendant's assignments of error do not conform to the rules of this court, in that they do not assign as errors the action of the trial court in granting or overruling the motion for a new trial.

This court has held in the case of L. & N. R. R. Co. v. Carrie Bell Evins, Davidson County Law, opinion by Presiding Justice Faw, filed at Nashville on August 6, 1930; and also in the case of Catherine Phillips v. D. J. Johns et al., Davidson County Law, opinion filed at Nashville on December 6, 1930, that assignments of errors are not fatally defective because of the omission of a specific assertion therein that the trial court erred in overruling the motion for a new trial.

It is further insisted that in several of the assignments of er· the record is not cited, and in others that there are no citations authorities or any reasons given why the court erred. While the assignments of errors might have been more specific and the citations of the record would have aided the court, yet we think that they are sufficiently aided by the brief to come within our rules, and these contentions must be overruled, except as otherwise hereinafter stated.

1. Only one witness was offered by the defendant, Dr. Tigert, who testified to the extent of Hoover's injuries. His testimony agreed

with that of the other doctors introduced by the plaintiff. From the facts, as hereinabove stated, it will be seen that there was evidence to support the verdict, and the first assignment of error must, therefore, be overruled.

2. We are of the opinion that the verdict was not excessive.

3. Defendant waived his motion for a directed verdict made at the close of plaintiff's proof, by afterwards introducing evidence. Rhoton v. Burton, 2 Tenn. App., 164; Gerber Co. v. Smith, 150 Tenn., 255, 263 S. W., 974; Coal & Iron Co. v. Bennett, 8 Hig., 210; Ry. & Lt. Co. v. Henderson, 118 Tenn., 284, 99 S. W., 700. Hence, this assignment is overruled.

4. The defendant's fourth assignment is that the court erred in overruling defendant's motion for peremptory instructions, made at the conclusion of all the proof. Said motion asked for peremptory instructions on the ground that plaintiff and defendant were engaged in a joint enterprise; that they were under the influence of liquor which proximately contributed to the accident and that the plaintiff was guilty of contributory negligence; and that the suit is collusive, fictitious and not adversary, and was brought with the view of affecting the rights of third parties, and should be dismissed.

We are of the opinion that the court was correct in overruling this motion. The uncontroverted evidence shows that the plaintiff was a guest in the automobile. There is no proof that plaintiff and defendant were engaged in a joint enterprise. The weight of the evidence is that neither the plaintiff nor the defendant was intoxicated, and that plaintiff was not guilty of contributory negligence, which questions have been passed upon by the jury in favor of the plaintiff and we are concluded by the verdict.

The action is not fictitious. A fictitious action is "a suit brought on pretense of a controversy when no such controversy in truth exists." Bouvier's Law Dictionary.

There is no proof of collusion. Collusion is "an agreement between two or more persons to defraud a person of his rights by the forms of law, or to obtain an object forbidden by law." Bouvier's Law Dictionary. Collusion is defined by Webster, first, in law, as a "deceitful agreement or compact between two or more persons for the one party to bring an action against the other for some evil purpose, so as to defraud a third person of his rights; it is a secret understanding between two parties who plead or proceed fraudulently against each other to the prejudice of a third person; and in general may be defined as a secret agreement and co-operation for a fraudulent purpose." Neal & Kennedy Co. v. Ellis, 138 Tenn., 216, 197 S. W., 489.

"Collusion is where two persons, apparently in a hostile position or having conflicting interests, by arrangement do some act in order to injure a third person or deceive a court." Carey v. Houston & T. C. R. R. Co. (U. S.), 52 Fed. 671, 675.

"Collusion is equally possible in a good case, though it is less frequently practiced, the temptation being wanting. For, however just a cause in itself may be, if parties corruptly collude in the management of it before the tribunal, so that in reality both are plaintiffs, while by the record the one appears as plaintiff, and the other as defendant, this, in reason, and it is believed also in authority, will, as collusion, bar the proceedings." (Belz v. Belz, 33 Ill. App., 105, 108.

But an amicable action is not fictitious within the meaning of the rule. 15 C. J., 784.

In this case the proof shows that there was an accident caused by defendant's negligence, in which Hoover was seriously injured. Hoover had a right to maintain this suit against Petway. His right in this respect is not affected by the relationship or the fact that he had insurance. We passed on this proposition in an opinion filed at Nashville on October 25, 1930, in the case of Miss Polly Reece v. R. M. Reece, Jr., Sumner County Law, which sufficiently reviews the proposition.

The testimony does not show that the defendant, Petway, has conspired with the plaintiff, Hoover, to allow a judgment to be rendered against Petway, knowing the insurance company will have to pay it.

This is not a suit affecting the rights of a third person. The cases cited by defendant have no application to this suit. It was brought out by the defendant, in the absence of the jury, that the defendant, Petway, had liability insurance. A liability insurance policy is a contract between the insurance company and the insured by which the insurance company indemnifies the insured against any loss under a judgment obtained against him in such suit. The suit is against Petway and the judgment is against him.

Defendant's attorneys charge that the suit is collusive, is based entirely on the statement made by the plaintiff that he requested the defendant to send Mr. Lassing to see him, and Mr. Lassing was a lawyer. We are of the opinion that this is not sufficient to show that the suit was collusive.

The trial judge was not in error in overruling the motion for a directed verdict and this assignment must be overruled.

5. Defendant's fifth assignment complains of the trial judge's refusal, after the close of the evidence, and after the defendant had made a motion for peremptory instructions, which had been overruled, and plaintiff had made a motion for a directed verdict, which

was pending, to allow defendant's attorney to put defendant on the witness stand, in the absence of the jury, and examine defendant on the subject of plaintiff's asking defendant to tell a lawyer to call on him, in order to establish collusion.

This assignment fails to set out the evidence excluded or to state what the evidence would have been, and the ruling of the court on the same. The questions that defendant wanted to ask, but which were excluded by the judge, are not in the record.

The plaintiff's counsel having stated that his evidence was closed, and the defendant's that none would be introduced on his side, it was not error to refuse the plaintiff leave to examine a witness summoned by and attending on behalf of the defendant, however material his testimony. Cozart v. Lisle, Meigs, 67; Story v. Saunders, 8 Humph., 664; Kincaid v. Meadows, 3 Head, 189; Cash v. State, 10 Humph., 112.

The reopening of a case for the purpose of allowing additional or supplementary evidence, the omission of which was discovered after the parties had announced that they had closed their proof, is a matter within the discretion of the trial court and his action will not be disturbed unless manifest abuse is shown. Western Union Tel. Co. v. Kirkpatrick, 2 Hig. 41. It is discretionary with the circuit judge to reopen a case for additional proof where a motion for peremptory instructions has been made. Dick v. Power Co., 6 Higgins, 599; Boone v. Citizens Bank & Trust Co., 154 Tenn., 241, 290 S. W., 39.

"It is within the discretion of the court whether it shall grant or deny a motion to reopen the case and admit evidence after a demurrer to evidence, or after a motion for nonsuit or to direct a verdict has been made, after the court has announced its intention as to its ruling thereon or has denied the same, or after the motion has been granted, if the order has not been written, or entered upon the minutes or signed." 38 Cyc., 1366-7; L. & N. R. R. v. Parker, 12 Heisk., 49.

6 & 7. Defendant's sixth and seventh assignments complain of the trial court's rulings on the cross-examination of the plaintiff in regard to conversation between the plaintiff and defendant on the subject of the plaintiff's consulting a lawyer about this case. But these assignments fail to set out the evidence or to point out where the exclusion was erroneous. These assignments do not present any questions for this court's determination, "first, in that they do not set out the evidence excluded; and second, in that they do not point out wherein the exclusion was error." See Mauldin v. Schwill & Co., 1 Tenn. App., 347, 354.

The evidence which was brought out in the examination of the plaintiff, in the absence of the jury, had no bearing on the negli-

gence of defendant or rights of the plaintiff in this action and did not establish collusion between plaintiff and defendant.

For the reasons hereinabove stated, these assignments must be overruled.

8. Defendant's eighth assignment, to the effect that the court erred in refusing to permit the witness, Mrs. Hoover, the wife of the plaintiff, to testify as to a conversation with her husband about the possible embarrassment of bringing a suit against her brother-in-law, is not well made and must be overruled for two reasons: (1) Because the record does not show what her answer would have been and whether it was material evidence. The defendant could have asked that the jury be excused and that she then be required to answer. (2) Because it can be seen that her answer, whatever it might have been, would come within the prohibition of the statute (Shannon's Code, sec. 5596), which provides that all transactions and conversations had between husband and wife in relation to their own affairs, not in the presence of some third person, are incompetent. Farmers Bank of Lynchburg v. Farrar, 4 Tenn. App., 193.

9. The defendant's ninth assignment states that the court erred in charging the jury as to how the accident happened, in that the court's statement of the plaintiff's theory was confusing and contradictory.

While that portion of the charge as contained in the record is somewhat inartificially stated, yet we think that any one can understand what the judge intended to say, and we think the jury understood it. It correctly stated the plaintiff's contention, therefore this assignment is overruled.

10. The tenth assignment, that the trial court erred in failing to charge defendant's theory of how the accident happened, is not well made and must be overruled, because it does not show what defendant's theory was or that defendant requested the trial judge to charge his theory except as contained in the next two assignments of errors; hence this assignment must be overruled.

11 & 12. Defendant's eleventh and twelfth assignments complain of the court's refusal to charge two special requests as to how the accident happened.

Only one witness, the plaintiff, testified as to how the accident happened, and we have, in substance, set out his evidence in the statement of the case. These requests are not supported by any evidence and must be overruled.

It is well settled in this state that a party is not entitled to instructions on a hypothetical case, as to what might have occurred and the defendant's rights in such an event. He is not entitled to a charge on a theory that is possible but is not borne out by the

evidence. See Green v. State, 154 Tenn., 26, 285 S. W., 554; Sou. Ry. v. Cantrell, 5 Tenn. App., 677; Tenn. Cent. Ry. Co. v. Gleaves, 2 Tenn. App., 549.

13. The defendant's thirteenth assignment, that the court erred in refusing to permit the defendant to introduce in evidence and to prove by the testimony of plaintiff's witness, Dr. E. T. Rippy, the original hospital record of the Nashville General Hospital, which contained a statement that the plaintiff was intoxicated at the time of his admission, and to permit the defendant to cross-examine the witness thereon, is not well made for the reason that this identical record was admitted by consent of counsel and read to the jury. The case of Gage v. Railroad, 88 Tenn., 724, 14 S. W., 73, has no application to a matter of this kind. In that case it was said, "before the testimony was closed, defendants withdrew their objection, and offered that the witnesses might be examined. When the objection was sustained the witnesses had been discharged, and had left for their homes in another county. The defendants offered to permit counsel to state what they would prove, which was declined. In the case at bar the offer was not declined but counsel read the chart in full to the jury. He should not be permitted to accept a proposition of this kind and get the benefit of the chart and then complain of the action of the trial judge in refusing to admit it. Hence this assignment should be overruled.

14. The fourteenth assignment, to the effect that the court erred in refusing to permit the defendant's attorney in the presence of the jury to ask Dr. Rippy on cross-examination and to permit the witness to answer the following question: "Don't you know as a matter of fact that the hospital record shows that this man was intoxicated?" is not well made and must be overruled. The question calls for hearsay evidence, and the record does not show what his answer would have been. However, the later introduction of the hospital record, by consent, rendered this question and answer immaterial. For these reasons this assignment must be overruled.

15. The fifteenth assignment is that the court erred in not excluding the statements of counsel and the court made in the presence of the jury on the introduction of the hospital record, which statements are hereinabove set out. This assignment is not well made, as it is apparent that these remarks did not affect the result of the litigation. No principle is better settled than that this court will not reverse a case for statements of counsel, unless it affirmatively appears that such improper arguments or statements influenced the verdict. Pearson v. State, 143 Tenn., 385, 226 S. W., 538; Lauterbach v. State, 132 Tenn., 603, 179 S. W., 130.

It results that all the assignments of errors are overruled and the judgment of the lower court affirmed. Henry Hoover will re-

cover of J. M. Petway $3000 together with interest thereon from November 5, 1929, to the present. The cost of the cause including the cost of the appeal is adjudged against plaintiff in error, J. M. Petway, and the sureties on his appeal bond. Executions will issue accordingly.

Faw, P. J., and DeWitt, J., concur.