RICHARD HOGNER *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.    November 11, 12, 1907. — April 2, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Carrier,* Of passengers. *Negligence,* Street railway. *Street Railway. Practice, Civil,* Conduct of trial, Judge's charge.

The relation of carrier and passenger is created only by contract express or implied.

In order for an implied contract creating the relation of carrier and passenger to be proved, the evidence must show not only that the passenger offered himself for carriage as a passenger, but also that he was accepted as such.

One cannot become a passenger upon a vehicle used by a carrier for the transportation of passengers by forcing his way upon such vehicle against the will of the carrier.

At the trial of an action of tort against a street railway company for injuries alleged to have been received by the plaintiff by reason of his wrongfully having been removed from a closed electric street car of the defendant, one of the questions at issue was whether or not, at the time of his removal from the car, the plaintiff was a passenger. It was not disputed that, when removed, the plaintiff had been for a considerable distance standing on the lower step of the rear platform of the car, that there were unoccupied seats in the car and that it was during the hours of crowded traffic. The defendant's evidence tended to show that the plaintiff had swung upon the step when the car was in motion, and, though repeatedly requested by the conductor to get either on or off, had refused to do either when the car stopped, but remained where he was, hanging on to the "grab iron" with both hands, "so that no one could enter or leave the car," and that, after further remonstrance, the conductor, with assistance, removed him to the sidewalk. *Held,* that there was evidence from which the jury were warranted in finding that the plaintiff was not a passenger when he was removed from the car.

A charge to a jury is not objectionable merely because it contains graphic illustrations of propositions of law, or because some expressions in it, when considered apart from their setting, are misleading, if, when such expressions are considered in their proper setting, and the charge is considered as a whole, it fairly leaves the case to the jury upon correct instructions.

TORT for personal injuries alleged to have been received by the plaintiff while being removed by force from the lower step of a closed electric car of the defendant.   Writ in the Superior Court for the county of Suffolk dated February 8, 1905.

There was a trial before *Richardson,* J.   The substance of the evidence is stated in the opinion.   The presiding judge charged the jury in part as follows:

" The first question which lies at the foundation of the plaintiff's claim is the question of whether the plaintiff ever became

a passenger on this car, having the rights of a passenger and having created the obligations of a carrier to a passenger. Now, that depends upon whether or not there was any contract between the passenger and the carrier; nobody will gainsay that. I do not mean by that an express contract. Probably nine tenths of the contracts that are made when we ride on the cars, especially the street cars, are made by implication — by conduct; and the inquiry arises whether or not in this case a contract is made by implication, because there was no express contract.

" Now, when it is said that a common carrier, a corporation of this kind, which has public duties, is bound to carry every one who presents himself, I do not think that counsel for the plaintiff means that. It is not true. They have a duty to perform, and if they don't undertake to perform the duty and you are injured by your not being taken on the car, the road might be liable for not taking you; but, inasmuch as the obligation to carry you safely and not put you off the car grows out of a contract, unless the circumstances are such that they show you that there has been a contract implied, the obligation does not arise. . . . ' Generally a carrier of passengers is not bound to carry all persons at all times, for it might be utterly unable, if such a requirement were made of it, to prevent itself from ruin. For instance, a carrier is not required to receive and carry any one whose ostensible business is such as would injure the line, one fleeing from justice, one going upon the train to assault a passenger or to commit larceny or robbery, or for interfering with proper regulations of the company, or for crime,' and there have been a good many cases in this State where carriers have refused to carry people who are under the influence of liquor, and suits have been brought against conductors because they have refused to put out people who were intoxicated. So you see that that contract is qualified by the condition and the situation, and I state this, as I think it is the rule of the law, that this defendant corporation might refuse to take anybody, you or me even, if we presented ourselves to be taken. They might be liable to an action, if we suffered any loss of time or were thrown out of employment or lost business, for not taking us; but I could not make, nor can you make, a contract with a corporation to carry you against its will.

" It takes two to make a contract, and, if a passenger presents himself and the railroad company won't take him, is there any contract? Can you fight your way on to a passenger railroad car and then claim that you are a passenger? Why, you see in a moment you can't do that. You go down to Park Street — very likely some of you take the car there — or the next station, Boylston Street, you will find sometimes the car starts when it is not half full, and a guard steps upon the front steps, and another upon the lower step of the car, and prevents you from getting on the car when it is half full. He can do it. Perhaps you might sue him if you were injured by having to wait for the next car, but you can't oblige him to take you on that car. . . .

" The plaintiff's claim is that he was standing at Marcella Street, and this car came along and stopped there, and he attempted to get on while the car was standing still, and got both feet on to the running board, and a conductor came out and something occurred there, and he told him that he must get off, that he could not ride on that car. Now, if there had been an invitation — an apparent invitation up to that time, for him to get on to that car and ride, which might have ripened into a contract right off if the conductor had assented to his riding there, that would have been one thing; but it appears that, as soon as the conductor saw he was on there, and immediately when he got on, he told him he must get off the car. That is his theory of the case, as I understand; that is his claim. Now, as I began to say, if there had been the appearance of an assent for the plaintiff to get on, by getting on, it was revoked by the manager and conductor of the car stating to him that he could not ride, to get off. . . . ' Out of the duty to carry springs a license to every person, having no notice to keep off, to go upon the carrier's conveyance; but with such notice the license is withdrawn, and, whether rightful or wrongful, such right cannot be enforced *vi et armis,*' that is, it can't be enforced by force. The remedy of a person so aggrieved is by action. And, referring once again to what may be familiar to you, which occurs at the stations, where you are ready to get on and want to get on the car, but a guard prevents you from getting on the car, just as a car starts; does anybody claim that a man who is prevented from getting on at the Park Street station or any other similar

place, can fight his way on to the platform of the car, against the request and objection of the guard there, and then claim that he has all the rights of a passenger? If he can, one party — one man — can make a contract alone and hold another party obliged to it. You see, that is not so, and the very fact that they do it when the cars are not half full sometimes, shows what the practice is, at all events. I know that parties have been held to be passengers who have been standing on platforms, and in one case where he was on the running board. That is a case I referred to, a case which I tried, myself, in this very room, I think, ten years ago. A man was standing on the running board, the car was full, and he could not get on to the platform or into the car, and the conductor let him stay on the running board. Well, that made a passenger of him, because the conductor saw him there and assented to it. Whether he took fare or not is perhaps immaterial, only that it would be pretty good evidence, perhaps, that he assented to it. If he assents to it, then he becomes a passenger; but if the man who has charge of the conveyance — the conductor usually — refuses absolutely to take a passenger on the car, I don't understand, or I don't see how it could be claimed that there is a relation existing, created by contract, between the passenger and the carrier, and I make this ruling, applicable to this case: If the car had stopped at a stopping place and was at a standstill, and the plaintiff had stepped on the lower step, and at once, as soon as he did so, the conductor objected and forbade his coming on to the car, it was the duty of the plaintiff to step off, if he could do so easily, and safely. He had no right to force himself on to the car against the will and express objection of the conductor who was in charge and control of the car, and, after standing and waiting a reasonable time for the plaintiff to step off, he still refusing to do so, or to come into the car, the conductor had the right to remove him from the steps, using no more force than was reasonably necessary.

" Something has been said about reasonable rules of the road for the protection of the passengers. All railroads may make reasonable rules and regulations in respect to the conduct of their business and the safety of passengers, and I understand it to be a rule, and the courts have recognized it time and

time again, that it is a reasonable rule that railroads, street railways especially — and I say 'especially' because this is a case arising on a street railway — that a regulation forbidding a passenger to ride on the steps of a car is a reasonable regulation, provided there is room in the car and there is nothing to prevent his going into the car and remaining there in a place of safety. And the rule is not simply for the protection of the moneyed interest of the company; it is for the safety of the parties as well.

"Speaking about the fact that a man may create the obligation that exists between a carrier and a passenger by getting on to the running board, why, can a man run and jump on to the running board, when the car is in motion, and call himself a passenger? Can a boy do that? Why, of course not; you would say he can't do it that way. Well, that shows that there is some limitation to this statement that, if a man is once on the running board, he is a passenger. You will see by a little consideration that that can't be so. If he gets on to the running board stealthily, or if he gets on to the running board and stays on the running board against the wishes or assent of the conductor of the car, the court says if he is injured by being obliged to keep off the car, he must seek damages in law. The court will give you redress if you suffer any damages, but you can't take the law into your own hands and fight yourself on to a car; you can't do that. So that is the reason that I have given you the rule I have, to the effect, referring to the theory of the plaintiff in this case that they would not let him get on to the car at all."

At this point in the charge, counsel for the plaintiff interrupted the presiding judge, saying, "Pardon me; I don't think that is our claim at all. Our claim is that we were on the car, and no objection at all made to our getting on." The presiding judge replied, "You were on the car? You were on the step, and I say, if your client was on the step, do you claim that he had a right to ride on the step against the will of the conductor?" The plaintiff's counsel answered, "I have so claimed, but I claim that he was a passenger when he was on the step, and entitled to all the rights of a passenger."

The presiding judge then continued with the charge: "Well,

it is not the right of a passenger on a street electric car to ride on the lower step of a car, standing there, when there is plenty of room inside, and when there is no reason at all why he should not get on to the car and go into a place of safety. That is laid down in all the authorities and cases that I know of. There are a few exceptions, and I have stated one, where a man got on to the running board and stayed there because he could not do otherwise; but that is not this. All the evidence is in this case that there was plenty of room inside.

"Now the defendant has made another claim which is quite different from what the plaintiff claims. He says that the plaintiff got on or swung himself on to the car somewhere in the vicinity of Townsend Street . . . and that then an altercation took place between him and one Clarke, who stood on the platform, between the controller and that side of the car, and that some question arose about whether the plaintiff could have Clarke's place, . . . that the plaintiff was on the step of the car, riding there, and had ridden there part of the way between Townsend Street and Marcella Street, and was requested repeatedly, while he was there and riding there, to either come up into the car or to get off, that he ought not and could not ride there. If there was room in the car for him to go in, and there was nothing to prevent his going in, I state to you that it was the plaintiff's duty to do one thing or the other. The defendant claims that he did not do one thing or the other, that just before he got to Marcella Street the conductor caused the car to stop, and then the request was repeated. . . . So I say that, if the request for him to get off was repeated after the car stopped, when he could have got off safely and without any risk to himself, it was his duty to do so; and, further, if that was the case, that the plaintiff would not either come into the car or come off the step of the car, and, there being nothing why he could not do it, if he was requested to do one or the other, and did not do it, the conductor had the right to use sufficiently reasonable force to remove him from the steps or to carry him into the car; and, inasmuch as you would not expect a man to carry a passenger into the car who did not want to go in, if that is so, why, you would suppose he would remove him from the steps and put him down into the street. And if you find that he refused to come

into the car or step off from the step of the car, you are brought to the only question in the case, if you find for the contention of the defendant, namely, whether or not in removing him from the car unreasonable and unnecessary force was used and the plaintiff injured. . . . And you will recall as well as you can what was done. I do not understand that the plaintiff claims that anybody struck him. That question was asked him, and he said 'No,' as I remember it; the parties took hold of his hands, released them from the irons on one side and the other, and one man put his arm around him and stood him down in the street. They say that is all they did. They say, further, that he undertook to assault the conductor, to get at him, or do something to him — made some threat. Perhaps that is unimportant except to throw some light upon the disposition of the plaintiff.

" Now, assuming that [the defendant] had a right to remove [the plaintiff] from the steps, if unnecessary and unreasonable force were used to do that, for that excessive force, if the plaintiff received an injury, the defendant might be liable. You will have to separate that, if you come to that question, from the question of the indignity of being put off, because, if you find the defendant's contention correct, the defendant had a right to put him off — I mean the contention that he refused either to come on to the car farther or to step off the car. . . . This case differs quite materially from the case which some of you possibly tried the other day, where there was a question of excessive force of a constable who arrested a man for non-payment of tax. It might have seemed in that case that the constable might have waited until the next day, or the next, or made some further demands; but here the conductor was in charge of a car coming into the city with passengers, and the cars were waiting there, and he had to do something or else stop the transit of cars and the carriage of passengers. Three cars had already stopped there. So, when you come to consider the conduct of the conductor or motorman in removing him from the steps, you take all that into account.

" So the question comes down to this, on the rules which I have stated to you, whether or not the plaintiff became a passenger on the car at all. If he did not, then I don't understand that the plaintiff has any claim whatever here, unless it be a

claim for the use of excessive force for removing him from the car. If he became a passenger, on the rules of law that I have endeavored to state to you on the one side and the other, then the plaintiff had a right to ride on the car, and the defendant would have no right to remove him, and the road would be subjected to an action and to damages if he did remove him."

In response to a request by the plaintiff, made after the charge, that he rule that, " If the conductor invited the plaintiff to enter the car, that created him as a passenger," the presiding judge stated, " No, not unless he accepted the invitation. If he invited him into the car and he did not come, an invitation not accepted did not amount to anything "; and the plaintiff excepted.

Upon the plaintiff's counsel asking to have an exception noted " to the portion [of the charge which states] that his intent to get on — that is, of the plaintiff's intent — was revoked by the conductor," the presiding judge stated, " No; I say it *might* be revoked. A man might present himself with the appearance of becoming a passenger, but if before he got on to the car and had become a passenger, and as soon as the intention was made known to the conductor, the conductor might refuse to accept him as a passenger, and refuse to let him get on to the car, and in that situation he can't force himself on to the car — he can't put himself on to the car by force; he must have his resort to law, if he sustained any damage. That is what I meant to say."

The plaintiff excepted to the whole charge and pointed out various portions to which he specifically excepted. There was a verdict for the defendant.

*E. O. Achorn*, for the plaintiff.

*F. H. Chase*, (*R. M. Bowen* with him,) for the defendant.

HAMMOND, J. This is an action of tort in which the plaintiff seeks to recover damages for being forcibly removed from one of the defendant's cars after he had boarded it. The declaration contains two counts, in each of which the assault is alleged to have been committed while the plaintiff was "attempting to board . . . [the car] . . . to ride upon the same as a passenger for hire."

As is usual in such cases, the evidence as to the details was conflicting. The evidence introduced by the plaintiff tended to

show that by reason of a surgical operation which had been recently performed upon his back, from the effects of which he had not fully recovered, he was somewhat infirm; that upon his signal the car stopped for him, with the rear platform right in front of him; that he took hold of the "grab handles" and got upon the lower step; that there were three or four passengers in the vestibule; that he asked one of them to let him take hold of the switch box, saying he was a sick man and needed to help himself up in that way; that they only laughed at him; that with both feet still on the lower step he asked the conductor, who was standing "half way in the rear opening and leaning forward," for permission to take hold of him, saying to him, "I am sick and have a sore back and do not dare to bend the back"; that the conductor said to him, "You are not sick, you do not appear as a sick man," and ordered him off; and that he, the plaintiff, was forcibly removed from the lower step to the ground by the conductor and motorman.

The evidence for the defendant tended to show as follows: "That the plaintiff signalled the car at Townsend Street and swung on while the car was still in motion. When the plaintiff had so swung on and was standing on the lower step, he made motions to a passenger who was standing between the controller and the step to move over, at the same time uttering some incoherent words which the conductor and passenger could not fully understand about his sick back. He finally grabbed hold of the coat of this passenger, who had refused to move from his position, and opened two or three buttons of his coat. The conductor then asked what the trouble was and told the plaintiff to come into the car off the step. The plaintiff rode from Townsend Street to Marcella Street on the lower step of the car holding on to the grab irons. During this time the conductor repeatedly told the plaintiff that he 'could not ride there but must get on or get off.'

"The evidence further showed that this happening took place during the rush hours, and that the conductor offered to assist the plaintiff, but that the plaintiff repulsed all offers. Although repeatedly told that he could not ride on the step and he must get either on or off, the plaintiff paid no attention to the conductor's requests. It further appeared that there was plenty of

room for him to enter the car and plenty of seats inside.   The plaintiff during all the time he was on the car remained on the lower car step in violation of the rules of the company, and refused to get on or off and stood so that no one could enter or leave the car.   When the car approached Marcella Street the plaintiff having refused to enter the car or come off the step, the conductor gave three bells for an immediate stop and called for assistance to remove the plaintiff.   The plaintiff was again asked to get off the step or get on the car, and still refused.

" The motorman of this car and the motorman of the second car behind came to the conductor's assistance and asked the plaintiff to obey the conductor's requests and avoid any trouble. The plaintiff still refused and was removed.   After they got the plaintiff down into the street, they removed him to a position about in the gutter.   The plaintiff grabbed hold of the conductor and struck at him with an umbrella.   The car then proceeded."

One of the questions was whether the plaintiff had become a passenger.   " One becomes a passenger on a railroad when he puts himself into the care of the railroad company to be transported under a contract, and is received and accepted as a passenger by the company.   There is hardly ever any formal act of delivery of one's person into the care of the carrier, or of acceptance by the carrier of one who presents himself for transportation, and so the existence of the relation of passenger and carrier is commonly to be implied from circumstances.   These circumstances must be such as to warrant an implication that the one has offered himself to be carried on a trip about to be made, and that the other has accepted his offer, and has received him to be properly cared for. . . . A railroad company holds itself out as ready to receive as passengers all persons who present themselves in a proper condition, and in a proper manner, at a proper place to be carried.   It invites everybody to come who is willing to be governed by its rules and regulations.   In a case like this, the question is whether the person has presented himself in readiness to be carried under such circumstances in reference to time, place, manner, and condition that the railroad company must be deemed to have accepted him as a passenger."   Knowlton, J., in *Webster* v. *Fitchburg Railroad*, 161 Mass. 298, 299,

300.   The relation of carrier and passenger is created by con-
tract express or implied.   In the case of a street railway com-
pany, it is rarely created by express contract when the car is
boarded by the passenger from the street.   Whether the relation
has begun is generally to be shown by the circumstances.   But,
however shown, it must appear at least that the passenger has
offered himself and has been accepted.   It is not enough that
he has offered himself.   The acceptance by the carrier is needed.
It is true that the carrier ought to consent where there is no
reasonable objection.   Still it does not necessarily follow that
it has consented or will consent in any given case.   For no
good reason it may decline to accept the offered passenger; and
in such case he cannot become a passenger by forcing his way
upon the car against the will of the carrier.   His remedy is by
way of damages for the unwarrantable refusal to accept him.
These principles are too familiar to require the citation of
authorities in their support.

Upon the evidence the question whether the plaintiff was a
passenger was for the jury.   If the evidence for the defendant
was believed, the jury might find that neither by the motorman
nor by the conductor was the plaintiff recognized as a proposed
passenger, much less accepted as such; but that the plaintiff,
without the knowledge of either, got upon the step of the car while
it was in motion, and that the conductor, as soon as he saw him,
refused to accept him as a passenger unless he would get above
the lower step where he was standing, and that the plaintiff
refused to accept this condition.   If such was the case, the jury
might well find that the contract of carriage never had been
made, or in other words, that the plaintiff never became a pas-
senger.   The plaintiff, relying upon cases like *Brien* v. *Ben-
nett*, 8 Car. & P. 724, *Gordon* v. *West End Street Railway*, 175
Mass. 181, and *Smith* v. *St. Paul City Railway*, 32 Minn. 1,
strongly contends that as matter of law the plaintiff became a
passenger as soon as he got upon the step.   In all those cases,
however, it appeared that the car or vehicle had stopped in
obedience to a signal from the proposed passenger.   In other
words, the passenger had offered himself and been accepted;
and the act of getting upon the step was an act done in pur-
suance of the contract.   These and similar cases cannot be

regarded as authorities in support of the proposition that upon the evidence in this case the plaintiff became a passenger as soon as he stepped upon the car.

Upon an examination of the charge to the jury it appears that the judge stated the law in accordance with the principles above set forth; and, while the illustrations were somewhat graphic, and while some of the expressions of the judge when considered apart from their setting might seem to be misleading, yet that when the charge is considered as a whole and these expressions are considered in their proper setting, the judge fairly left the case to the jury upon correct instructions and made no error in law.

Upon the whole evidence the questions also as to whether the plaintiff, whether or not a passenger, was removed from the car for proper cause and in a proper manner, were left to the jury upon instructions not erroneous in law.

*Exceptions overruled.*