## MOORE v. ATCHISON, T. & S. F. RY. CO.

No. 418.  Opinion Filed July 12, 1910.

(110 Pac. 1059.)

1.   APPEAL AND ERROR—Review—Error Without Prejudice—Exclusion of Evidence. If certain evidence be admissible, yet, if, upon the entire record, its exclusion could not under any event operate to the prejudice of the party offering same, such exclusion is not a reversible error.

2.   PRINCIPAL AND AGENT—Corporations — Carriers—Acts of Servant or Agent—Torts. Under the decisions controlling in the territory of Oklahoma, punitive or vindictive damages are not to be allowed as against the principal, unless the principal participated in the wrongful act of the agent, expressly or impliedly, by his conduct authorizing it or approving it either before or after it was committed.

(a)  For acts done by the agents of a corporation in the course of its business and their employment, the corporation is responsible in the same manner and to the same extent as an individual is responsible under similar circumstances.

(b)  A corporation is liable, like an individual, to make compensation for any tort committed by an agent in the course of his employment, although the act is done wantonly and recklessly or against the express orders of the principal.

(c)  A corporation, like a natural person, may be held liable in exemplary or punitive damages for an act by an agent within the scope of his employment, providing the criminal in-

tent necessary to warrant the imposition of such damages is brought home to the corporation.

(d) A corporation, as an individual, if any wantonness or mischief on the part of an agent acting within the scope of his employment causes additional injury to the plaintiff in body or mind, is liable to make compensation for the whole injury suffered.

(e) A railroad corporation, without participating in such wanton acts, cannot be charged with punitive or exemplary damages for the illegal, wanton, and oppressive conduct of a conductor or brakeman of one of its trains toward a passenger.

3. **CARRIERS—Passengers—Personal Injuries—Contributory Fault.** A passenger, having been ejected from the passenger train of the defendant in error on the alleged ground of his failure to furnish a ticket or pay his fare, as the train began moving attempted to re-enter same, and, getting upon the steps of one of the cars, the brakeman kicked said party so as to cause him to lose his hold and fall from the moving train, sustaining an injury. Held, that under such assumed state of facts the act of the brakeman was a willful assault, and therefore the party, though not entitled to re-enter said train, in placing himself in such position, was not a contributing cause of the injury.

(Syllabus by the Court.)

*Error from District Court, Noble County; B. F. Hainer, Judge.*

Action by Samuel H. Moore against the Atchison, Topeka & Santa Fe Railway Company. From a judgment in his favor plaintiff brings error. Reversed, with instructions to grant a new trial.

*Henry S. Johnston,* for plaintiff in error.—On rights of trespassers on trains: 7 Thomp. Neg., secs. 3304, 3308, 3316; *Railroad Co. v. Daugherty,* 53 Ill. App. 282; *Railroad Co. v. Fantzinger* (Tex.) 49 S. W. 677; 6 Thomp. Neg., secs. 3172, 3177, 3178; *Carter v. Ry. Co.,* 49 Am. Rep. 780; *Railroad Co. v. West,* (Ky.) 60 S. W. 290. Liability of master for torts of servant: *Railway Co. v. Kirk* (Ind.) 1 N. E. 849; *Railroad Co. v. Conway,* 5 Pac. 142.

*Cottingham & Bledsoe, George M. Green,* and *Devereux & Hildreth,* for defendant in error.—On question of punitive damages: *Railway Co. v. Prentice,* 147 U. S. 101; *Railway Co. v. Chamberlain,* 4 Okla. 542.

WILLIAMS, J.   The following questions on this record are essential for determination:

(1)   Did the court err in excluding what was said by other parties to the conductor after the controversy arose, but before the final ejection from the car, between him and the plaintiff in error as to his having bought a ticket?

(2)   Did the court err in instructing the jury that the plaintiff in error was not entitled to recover punitive or exemplary damages, sometimes called "smart money"?

(3)   Did the court err in giving instruction No. 8, in part as follows:

"Likewise, if he attempted to board the train on the rear end of the Pullman or sleeper, after the train had started to move, and after the doors were closed, he had no right to board that train, and if he sustained any injuries while attempting to get on the rear end of the train while it was moving out of the station, or about to move from the station, and if he thereby sustained any injuries, the company would not be liable for such injuries."

1.   The following proceedings were had:

"Q.   State what happened to you when you were being put off.   A.   Well, there were five or six told the conductor I had a ticket and they saw me buy it.   Mr. Green (attorney for defendant in error):   We object to what other people said.   The Court: Objection sustained.   *   *   *   Q.   State if any person other than yourself informed the conductor that they had seen you buy the ticket.   A.   Yes, sir.   Mr. Green:   To which the defendant objects.   The Court:   Objection sustained."

A drummer by the name of Miller testified that, before his (plaintiff in error S. H. Moore's) ejection from the car was consummated, "I myself told the conductor   *   *   *   that I saw Mr. Moore give him a ticket.   I told him that another gentleman says, I saw him buy the ticket.   *   *   *   Part of this conversation arose while they were taking him from the seat.   I told the conductor I saw him give him a ticket, and another gentleman by the name of Robinson told him that he saw him buy a ticket, and after a little Mr. Robinson vouched that he saw him buy the

ticket at Salina, Kan., and there was 13 people in the crowd that Mr. Robinson was at the head of and they all vouched for seeing him buy the ticket.   Q.  Did they say that to the conductor?" On objection the court ruled that "What the witness (Miller) told Wilcox (the conductor) is competent."   "Mr. Harris (attorney for defendant) : I ask that the statements of the witness outside of any statements to the conductor with reference to having seen the ticket purchased be stricken out as incompetent.   The Court:   Objection sustained as to the other statements except that of the witness."

The question of the good faith of the conductor in ejecting the plaintiff from the train was an issue submitted to the jury, and if, as a reasonable person, he ejected the plaintiff from the train, honestly believing that he had not delivered him a ticket, the jury were justifiable in finding that he acted in good faith. The following special questions were submitted to the jury:

"Q. 2.   Do you allow anything for injury to plaintiff's feelings, and, if so, how much?   A.   Sixty dollars ($60.00).

"Q. 3.   Did the conductor, porter, or brakeman use any violence towards the plaintiff at the time he was first ejected?   A. To a limited degree.

"Q. 4.   How much do you allow plaintiff by reason of the violence used by the conductor, brakeman, or porter?   A. Nothing.

"Q. 5.   How much do you allow plaintiff for actual injuries? A.   Nothing except mental injury.

"Q. 6.   How much do you allow plaintiff for loss of time? A.   Two dollars ($2.00).

"Q. 7.   How much do you allow plaintiff for inconvenience in remaining over in Derby?   A.   Two dollars ($2.00).

"Q. 8.   Was it the custom of the conductor to give a check to a passenger for his ticket?   A.   Sometimes.

"Q. 9. Did the conductor act in good faith, and with an honest belief that the plaintiff had not paid his fare to Perry?   A. Yes.

"Q. 10.   Did the conductor or any of the other employees act in a malicious or wanton manner toward the plaintiff?   A.   To a limited degree.

"Q. 11.   How much time did he lose?   A.   One day.

"Q. 12. What was his time worth per day? A. Two dollars ($2.00)."

The general verdict was in favor of the plaintiff on all the issues, assessing the amount of his recovery at the sum of $66.85. As to admissibility of said evidence see section 1789, vol. 3, Wigmore on Evidence (1904).

The conductor testified, in substance, that he did not remember the witness Miller telling him that he saw the plaintiff give him a ticket; that he might have said it; that he would not deny that such statement was made, but, if it was made, he had no recollection of it. The conductor further testified *in haec verba*:

"No, they said he had been riding on the train. They had seen him on the train. I do not deny that the passenger bought a ticket. I do not deny that. I did not question that at the time. The question was whether two men were riding on it or not. I wanted my receipt for my ticket to Perry, which I had given the passenger if he gave me a ticket to Perry. I work my train carefully and still know what I am doing. I have had lots of experience in that line."

The witness Miller having been permitted to testify that he told the conductor that he saw the plaintiff (Moore) give him a ticket, and the conductor having stated to the jury at the time that he ejected the plaintiff from the train that he did not question the fact that he (plaintiff in error) had bought a ticket at the initial point of his journey, but what he did question was as to whether the same had been delivered to him by the plaintiff, etc., and, if so, where the hat ticket he gave him was, conceding, but not deciding, that the excluded statements were admissible, we fail to see wherein there was any prejudicial error thereby committed against the plaintiff in error.

2. This action arose under the territory of Oklahoma, having been tried in the lower court prior to the erection of the state, and after such date, an appeal therefrom being prosecuted to this court, it was an existing suit, not finally determined.

Section 1 to the Schedule of the Constitution of Oklahoma provides that no existing rights, actions, suits, proceedings, con-

tracts, or claims shall be affected by the change in the forms of government, but all shall continue as if no change in the forms of government had taken place.

In *St. Louis & San Francisco Railroad Co. v. Goundieff,* 171 Fed. 319, 96 C. C. A. 211, it is said:

"Construing all of these provisions together, we are of opinion that they do not change, and were not intended to change, the method of procedure in cases pending in the courts of Indian Territory and of the territory of Oklahoma, but that the civil cases pending in the Indian Territory should, after statehood, continue under the law in force in the Indian Territory, and under that law no reply was required, prior to statehood. We do not think that the provision of the Constitution relied upon by the railroad company so changes the situation as to make a reply necessary."

In *Freeman v. Eldridge, infra,* 110 Pac. 1057, this excerpt was quoted at length and the rule therein announced followed. See, also, *Sullivan v. Mercantile Town Mut. Ins. Co.,* 20 Okla. 460, 94 Pac. 676, 129 Am. St. Rep. 761. Adhering to the same rule, as to existing suits under the territory of Oklahoma, the decisions of the Supreme Court of the United States having been controlling upon the Supreme Court of said territory, this court is bound by the same.

In *Lakeshore & Michigan, etc., R. Co. v. Prentice,* 147 U. S. 101, 13 Sup. Ct. 261, 37 L. Ed. 97, Mr. Justice Gray, in delivering the opinion of that court, said:

"The law applicable to this case has been found nowhere better stated than by Mr. Justice Brayton, afterwards Chief Justice of Rhode Island, in the earliest reported case of the kind, in which a passenger sued a railroad corporation for his wrongful expulsion from a train by the conductor, and recovered a verdict, but excepted to an instruction to the jury that 'punitive or vindictive damages, or smart money, were not to be allowed as against the principal participating in the wrongful act of the agent, expressly or impliedly, by his conduct authorizing it or approving it, either before or after it was committed.' This instruction was held to be right, for the following reasons: 'In cases where punitive or exemplary damages have been assessed, it has been done upon evidence of such willfulness, recklessness, or wickedness, on the part of the party at fault, as amounted to criminality, which for the

good of society and warning to the individual ought to be punished. If in such cases, or in any case of a civil nature, it is the policy of the law to visit upon the offender such exemplary damages as will operate as punishment and teach the lesson of caution to prevent a repetition of criminality, yet we do not see how such damages can be allowed, where the principal is prosecuted for the tortious act of his servant, unless there is proof in the cause to implicate the principal and make him *particeps criminis* of the agent's act. No man should be punished for that of which he is not guilty.' 'Where the proof does not implicate the principal, and, however, wicked the servant may have been, the principal neither expressly nor impliedly authorizes or ratifies the act, and the criminality of it is as much against him as against any other member of society, we think it is quite enough that he shall be liable in compensatory damages, for the injury sustained in consequence of the wrongful act of a person acting as his servant. *Hagan v. Providence & W. R. Co.*, 3 R. I. 88, 91 [62 Am. Dec. 377]. The like view was expressed by the Court of Appeals of New York, in an action brought against a railroad corporation by a passenger for injuries suffered by the neglect of a switchman, who was intoxicated at the time of the accident. It was held that evidence that the switchman was a man of intemperate habits, which was known to the agent of the company, having the power to employ and discharge him and other subordinates, was competent to support a claim for exemplary damages; but that a direction to the jury in general terms that in awarding damages they might add to full compensation for the injury 'such sum for exemplary damages as the case calls for, depending in a great measure of course upon the conduct of the defendant' entitled the defendant to a new trial; and Chief Justice Church, delivering the unanimous judgment of the court, stated the rule as follows: 'For injuries by the negligence of a servant while engaged in the business of the master, within the scope of his employment, the latter is liable for compensatory damages; but for such negligence, however gross or culpable, he is not liable to be punished in punitive damages unless he is also chargeable with gross misconduct. Such misconduct may be established by showing that the act of the servant was authorized or ratified, or that the master employed or retained the servant, knowing that he was incompetent, or, from bad habits, unfit for the position he occupied. Something more than ordinary negligence is requisite; it must be reckless and of a criminal nature, and clearly established. Corporations may incur this

liability as well as private persons.  If a railroad company, for instance, knowingly and wantonly employs a drunken engineer or switchman, or retains one after knowledge of his habits is clearly brought home to the company, or to a superintending agent authorized to employ and discharge him, and injury occurs by reason of such habits, the company may and ought to be amenable to the severest rule of damages; but I am not aware of any principle which permits a jury to award exemplary damages in a case which does not come up to this standard, or to graduate the amount of such damages by their views of the propriety of the conduct of the defendant, unless such conduct is of the character before specified.' *Cleghorn v. New York Cent. & H. R. R. Co.,* 56 N. Y. 44, 47, 48 [15 Am. Rep. 375]. It must be admitted that there is a wide divergence in the decisions of the state courts upon this question, and that corporations have been held liable for such damages under similar circumstances in New Hampshire, in Maine, and in many of the Western and Southern states.  But of the three leading cases on that side of the question, *Hopkins v. Atlantic & St. L. R. Co.,* 36 N. H. 9 [72 Am. Dec. 287], can hardly be reconciled with the later decisions in *Fay v. Parker,* 53 N. H. 342 [16 Am. Rep. 270], and *Bixby v. Dunlap,* 56 N. H. 456 [22 Am. Rep. 475], and in *Goddard v. Grand Trunk R. Co.* of *Canada,* 57 Me. 202, 228 [2 Am. Rep. 39], and *Atlantic & G. W. R. Co. v. Dunn,* 19 Ohio St. 162, 590 [2 Am. Rep. 382], there were strong dissenting opinions.  In many, if not most, of the other cases, either corporations were put upon different grounds in this respect from other principals, or else the distinction between imputing to the corporation such wrongful act and intent as would render it liable to make compensation to the person injured, and imputing to the corporation the intent necessary to be established in order to subject it to exemplary damages by way of punishment, was overlooked or disregarded.  Most of the cases on both sides of the question, not specifically cited above, are collected in 1 Sedgwick, Damages (8th Ed.) § 380.  In the case at bar, the plaintiff does not appear to have contended at the trial, or to have introduced any evidence tending to show, that the conductor was known to the defendant to be an unsuitable person in any respect, or that the defendant in any way participated in, approved, or ratified his treatment of the plaintiff; nor did the instructions given to the jury require them to be satisfied of any such fact before awarding punitive damages.  But the only fact

which they were required to find in order to support a claim for punitive damages against the corporation was that the conductor's illegal conduct was wanton and oppressive. For this error, as we cannot know how much of the verdict was intended by the jury as a compensation for the plaintiff's injury, and how much by way of punishing the corporation for an intent in which it had no part, the judgment must be reversed, and the case remanded to the circuit court, with directions to set aside the verdict, and to order a new trial."

This case was followed by the Supreme Court of the territory of Oklahoma in *A., T. & S. F. R. R. Co. v. Chamberlain*, 4 Okla. 547, 46 Pac. 499. The Prentice case was binding upon the trial court, and by virtue of section 1 to the Schedule of the Constitution, heretofore referred to, controls this court, and, therefore, there is no reversible error in the court's withdrawing from the consideration of the jury the question of punitive damages or smart money.

3. But it is insisted that the trial court erred in refusing to submit to the jury the question as to damages on account of the brakeman's alleged kicking the plaintiff from the rear end of the car after the train had started to move, and after the doors were closed, and excluding the same from the consideration of the jury. This act was denied by the brakeman; but, if upon the theory of the plaintiff he was entitled to recover, such issue should have been submitted to the jury under proper instructions. Section 1394, Comp. Laws 1909 (section 1050, St. Okla. T. 1893), provides:

"If any passenger shall refuse to pay his fare, it shall be lawful for the conductor of the train and the servants of the corporation to put him and his baggage out of the cars in the following manner: A passenger who refuses to pay his fare, or to conform to any lawful regulation of the carrier, may be ejected from the vehicle by the carrier. But this must be done with as little violence as possible, and at any usual stopping place, or near some dwelling house. After having ejected a passenger, a carrier has no right to require the payment of any part of his fare."

After a passenger has been ejected for refusal to pay his fare, the conductor seems to have a right to refuse to accept such par-

ty seeking to again board the car, and, after such refusal, to use a reasonable degree of force to prevent such person from boarding and entering the car, and for that purpose to lay hands upon him and interfere with his person, using no more force than was reasonably necessary, having no right to use any excessive or unreasonably force, or to wantonly attack any such intending passenger. *Sullivan v. Boston Elevated Ry. Co.,* 199 Mass. 73, 84 N. E. 844, 21 L. R. A. (N. S.) 36; *Webster v. Fitchburg R. Co.,* 161 Mass. 298, 37 N. E. 165, 24 L. R. A. 521; *Merrill v. Eastern R. Co.,* 139 Mass. 238, 1 N. E. 548, 52 Am. Rep. 705; *Hogner v. Boston Elev. R. Co.,* 198 Mass. 260, 84 N. E. 464, 15 L. R. A. (N. S.) 960; *Solomon v. Manhattan R. Co.,* 31 Hun, 5; *Stone v. N. W. R. Co.,* 47 Iowa, 82, 29 Am. Rep. 458.

In *Pickens v. Richmond, etc., R. Co. et al.,* 104 N. C. 312, 10 S. E. 556, it was held:

"When a person is put off a train for refusal to pay fare, at a regular station, or so near it that he can reach it while the train is stopping there, and buys a ticket from such depot to some point in the direction in which he is traveling, the weight of authority is in favor of the rule that he can be required, even then, to pay charges for the distance that he previously rode on the train without a ticket, and be ejected for refusal to do so."

But this question not being essential for determination in order to dispose of this case, we do not pass thereon.

The contention here raised is that the plaintiff was entitled to ride on said train, having bought and paid for a ticket and delivered same to the conductor, and, being wrongfully ejected from the car, immediately thereafter sought to re-enter the moving car, and whilst he was upon or hanging to the steps and in a dangerous position the brakeman wantonly and wilfully kicked plaintiff so as to cause him to lose his hold and fall, being thereby injured.

In *Johnson v. Chicago, St. Paul, M. & O. Ry. Co.,* 116 Iowa, 639, 88 N. W. 811, the court said:

"The brakeman, in the line of his duty, could lawfully expel the plaintiff as a trespasser upon the train; but if he discharged that duty with excessive force or violence, or at such time or in such manner as to unreasonably imperil the life and limb of the

trespasser, then he was negligent as charged, and his employer is liable. Of the authorities cited by the appellee, one only can fairly be said to give color to the doctrine advanced by counsel. It appears that this action was originally pending in the federal court, and there, after a ruling that plaintiff had failed to make a case, he was allowed to dismiss. See (C. C.) 94 Fed. 473. In the opinion there rendered, Shiras, J., recognizes the principle to which we have already referred, saying: 'A trespasser is not necessarily placed without the pale of the law, and he may recover for injury wilfully or recklessly inflicted upon him. Thus it is well established that a railway company cannot be justified in evicting a person from its train when the same is in such rapid motion as to necessarily cause risk to the life or limb of the person evicted, even though he is a trespasser. The high regard which the law places upon the life and limb of a citizen compels the company to exercise its right to evict a trespasser in such manner as not to incur the charge of wilful or reckless disregard of the safety of the person evicted.' Applying the rule thus clearly stated to the facts of the case, the federal court held that plaintiff did not come within its terms, because 'he voluntarily engaged in a running contest with the brakeman, in which plaintiff was unlawfully endeavoring to force himself upon defendant's train, and defendant was lawfully endeavoring to prevent the trespass.' From this language we must conclude that the testimony before that court was less favorable to plaintiff than is shown in the record before this court. As it is here presented, it cannot be fairly said that the brakeman was simply 'endeavoring to prevent a trespass.' The trespass was accomplished. The plaintiff was already on the car before he was assaulted by the brakeman. The brakeman's act was not an act of prevention or defense against an intending trespasser, but was an act of eviction, and this comes squarely within the principle affirmed by Judge Shiras. Reference is also made to *Bolin v. Railroad Co.*, [108 Wis. 333] 84 N. W. 446, 81 Am. St. Rep. 911. In this case the conductor ordered a certain trespasser to leave the train while in motion, and in making such exit the trespasser was killed. In exonerating the railroad company from liability, the court there says: 'He (the conductor) did not touch the deceased, nor threaten violence to him, nor do anything reasonably indicating that he was about to physically compel deceased to cease the trespass, and to accept imminent danger of personal injury in doing so'—a statement which renders that decision valueless as a precedent in the case

before us. In another place the same authority concedes the validity of the rule which we. apply in this case, saying: 'The doctrine that human life cannot wilfully be seriously imperiled to prevent or end a mere trespass upon property must not be invaded by the courts.' However leniently men generally may be disposed to look upon physical punishment administered to a persistent trespasser, the law cannot safely countenance such action; nor can even a just indignation against the perpetrator of a petty wrong be permitted to justify an assault which seriously imperils the life of the person of the wrongdoer. This is neither 'false humanity' nor 'maudlin sentiment,' as counsel suggest, but it is one of the indispensable principles which make up the barrier which Christian civilization has erected between law and lawlessness.

"* * * Appellee further urges that, plaintiff being a trespasser upon the train, he was therefore guilty of contributory negligence, and without remedy. The proposition is unsound. Being a trespasser, the company owed him no duty to provide him safe transportation, or to protect him against want of ordinary care on part of its employees; but it was still under the obligation, which we have already mentioned, not to evict him with unnecessary violence, nor to deliberately expose him to unreasonable hazard of injury. If the plea of contributory negligence were to be held good in such case, it would be equally effective if the brakeman, instead of kicking the plaintiff from the ladder, had made use of a loaded revolver.

"* * * Neither can it be said that, because plaintiff's act in boarding a moving train was in violation of the statute, such wrong upon his part affords a defense to the claim in suit. The fact that plaintiff's trespass was also a misdemeanor did not change the relations of the parties, nor absolve the defendant's trainmen from their obligation to observe the rules of law we have hereinbefore cited."

In *Galveston, H. & S. A. Ry. Co. v. Zantzinger et al.*, 92 Tex. 365, 48 S. W. 563, 44 L. R. A. 553, 71 Am. St. Rep. 859, the Supreme Court of that state, speaking through Mr Chief Justice Gaines, said:

" 'The questions certified are as follows: First. Should the act of the engineer in throwing out the steam and water for the purpose of ejecting Campbell from the engine be deemed wilful, in its relation to the result which actually followed, but was not

intended, so that the negligence of Campbell in placing himself in such a position, without which he would not have received his injury, cannot be considered contributory negligence, or should such act of the engineer be regarded as only a negligent cause of such injuries, with which the negligence of Campbell may be considered as contributing to the result? Second. Should the court, in applying the facts of this case as above stated to the rule announced in *Railway Co. v. Neff*, 87 Tex. 303, 28 S. W. 283, have assumed that Campbell's act in making the leap described was not contributory negligence, and that he was excused by the act of the engineer and the other facts of the situation from the exercise of ordinary prudence, or should it have submitted to the jury the question of the adequacy of such facts to produce a state of mind in which ordinary prudence should not be expected of him, and the further question whether or not such state of mind was produced?' * * * If the servants of the appellant company purposely threw the hot water upon Campbell, it was an intentional, and not a negligent, wrong. The fact that he was a trespasser upon the train did not justify the engineer's conduct. The latter had the right to remove him, and for that purpose to put his hands upon him, and to use such force as was necessary to accomplish that end. But the means adopted resulted in an assault. * * * When the negligence of the plaintiff concurs with that of the defendant, and contributes to produce the damage for which he sues, he cannot recover. It is not so if the act of the defendant be wilful. In speaking of the rule of contributory negligence, the Supreme Court of Indiana say: 'The doctrine, however, can have no application to the case of an intentional and unlawful assault and battery, for the reason that the person thus assaulted is under no obligation to exercise any care to avoid the same, by retreating or otherwise, and for the further reason that his want of care can in no just sense be said to contribute to the injury inflicted upon him by such assault and battery.' * * * The question under consideration, however, involves rather an inquiry as to the duty of a party who has been injured by the fault of another to use reasonable precautions to avoid the consequences of his injury. 1 Sedg. Dam. § 202. In negligence cases such duty is usually regarded as a part of the law of contributory negligence. The rule is that if a plaintiff, who has been injured by the negligent conduct of the defendant, fails to exercise reasonable care to avoid the consequences of his injury, he cannot recover for so much of his damage as results from that

failure. But does this rule apply to the case of a wilful injury? We are of opinion that it does not. Since one who has committed an assault and battery upon another cannot urge in his defense that the plaintiff might by the use of due care have avoided the battery, we think where the injury is intentional he should not be permitted to say, in reduction of the damages, that the plaintiff might have prevented them, at least in part, by careful conduct on his part. If negligence contributing to the injury cannot be set out to defeat the action when the act of the defendant was wilful, by a parity of reasoning the defendant in such a case should not be permitted to say that, but for the negligence of the plaintiff in failing to avoid the consequences of the wrong, he would have suffered no damage, or only a part of the damages for which he claims a recovery. We apprehend that a plaintiff cannot make a case by intentionally contributing to the injury which the defendant wilfully intends to inflict upon him. For example, should one intentionally hurl a missile at another, with the intent to injure, and should the other voluntarily place himself in its way, and thereby receive a battery which he would otherwise have escaped, the person so struck could not recover. So, when he has been intentionally injured, he should not be permitted to recover damages which might have resulted from his wilful omission to take reasonable precautions to avoid the consequences of the wrong. Since a negligent act of the plaintiff, contributing to a result brought about by the concurring negligent act of the defendant, exonerates the defendant from the consequences of his wrong—*pro tanto,* at least— so a wilful act of the plaintiff should have a like effect in case of an intentional injury. *Loker v. Damon,* 17 Pick. [Mass.] 284."

See, also, *Galveston, H. & S. A. Ry. Co., v. Zanzinger et al.* (Tex. Civ. App.) 49 S. W. 677; *Chicago, Milwaukee & St. Paul Ry Co. v. Doherty,* 53 Ill. App. 282; *Ill. Cent. Ry. Co. v. West,* 60 S. W. 290, 22 Ky. Law Rep. 1387; *Carter v. Louisville, New Albany & Chicago R. Co.,* 98 Ind. 552, 49 Am. Rep. 780; *Hewitt v. Swift,* 3 Allen (Mass.) 420; *Pittsburg, etc., Ry. Co. v. Caldwell,* 74 Pa. 421; *Shea v. Sixth Ave. Ry. Co.,* 62 N. Y. 180, 20 Am. Rep. 480; *Lovett v. Salem, etc., Ry. Co.,* 9 Allen (Mass.) 557; *Hoffman v. New York Central, etc., Ry. Co.,* 87 N. Y. 25, 41 Am. Rep. 337; *West Jersey S. & R. Co. v. Welsh,* 62 N. J. Law, 655, 42 Atl. 736, 72 Am. St. Rep. 659; *Benton v. Chicago, etc., Ry. Co.,* 55 Iowa,

496, 8 N. W. 330; *Johnson v. Chicago, etc., R. Co.*, 55 Iowa, 707, 8 N. W. 664.

Without passing upon the question as to plaintiff's being entitled to re-enter the car, we hold that he was entitled to have submitted under proper instructions the issue as to whether, whilst in a dangerous position, defendant's brakeman wilfully and unnecessarily and wantonly kicked him and caused him to fall from a moving train, thereby sustaining injury.

The judgment of the lower court is reversed, with instructions to grant a new trial.

DUNN, C. J., and KANE and TURNER, JJ., concur; HAYES, J., absent and not participating.