## SOUTHERN RY. CO. *v.* McNABB.

### (*Knoxville.* September Term, 1914.)

1. CARRIERS. Duty to receive passenger. Rules of carrier.
A rule of a railway company that local passengers would not
be carried on detoured trains, and that tickets would not be
sold them for such trains, was reasonable, and one which the
company had a right to make, and its enforcement did not
render it liable in damages, though a regularly scheduled local
train was two hours late. (*Post, pp.* 199-205.)

2. CARRIERS. Duty to receive and transport passengers.
When relation exists.
Plaintiff went to a railway station intending to take a train,
which was late, and was told that a detoured train would soon
pass, but that it would be against the rules to sell a ticket
to a local passenger for such train. He nevertheless stated
that he would board the train and see if the conductor would
put him off. Upon the arrival of the train he asked the con-
ductor if he could take that train, and was told to get aboard.
The conductor, however, believed that plaintiff had a ticket,
and, upon learning that he had no ticket before the train had
left the station, requested plaintiff to leave the train, which
he did. *Held,* that plaintiff did not become a passenger, and
was not entitled to be carried notwithstanding the company's
rule prohibiting the carriage of local passengers on such train,
on the theory that the relation of passenger and carrier, having
been established, could not be severed by the company. (*Post,
pp.* 199-205.)

3. CARRIERS. Rules. Validity.
Railway companies may adopt, and in a lawful and proper manner
enforce, reasonable rules and regulations not in contravention
of law or public policy for the carriage of freight and passengers
and the transaction of their business generally, and may de-

cline to accept as a passenger a person who refuses or fails to comply with such rules. (*Post, pp.* 206, 207.)

Case cited and approved: Railroad v. Turner, 100 Tenn., 213.

Cases cited and distinguished: Webster v. Railroad Co., 161 Mass., 298; Hogner v. Boston Elevated Ry. Co., 198 Mass., 260.

4. CARRIERS. Passengers. Who are passengers.

One who procures a ticket and procures passage upon a railway train by fraudulent misrepresentations is not a passenger, but a trespasser. (*Post, pp.* 207, 208.)

Case cited and approved: Fitzmaurice v. Railroad Co., 192 Mass. 159.

---

### FROM KNOX.

---

Appeal from the Circuit Court of Knox County.— Von A. Huffaker, Judge.

Jerome Templeton, for appellant.

L. D. Smith and Roscoe Word, for appellee.

Mr. Justice Faw delivered the opinion of the Court.

This suit was brought before a justice of the peace of Knox county by Dr. Chas. P. McNabb, against the Southern Railway Company, for damages. The cause of action is stated in the warrant of the justice of the peace as follows, to wit:

"On, to wit, the 29th day of March, 1912, the defendant failed and refused as a common carrier, to sell the plaintiff a railroad passenger ticket from Clinton to Knoxville, Tennessee, and further refused to trans-

Railroad v. McNabb.

port plaintiff as a passenger from Clinton to Knox-
ville, Tennessee, schedule time, or within reasonable
time; and wrongfully and unlawfully compelled plain-
tiff to leave its passenger coach and train at Clinton,
thereby delaying plaintiff for, to wit, two hours, and af-
ter notice that plaintiff was a practicing physician, and
under necessity of reaching Knoxville, where he re-
sided, at the earliest possible moment, to give profes-
sional attention to his patients."

The justice of the peace rendered judgment in favor
of the plaintiff for $499.99 and all costs, whereupon
defendant appealed to the circuit court.

In the circuit court the cause was heard by the cir-
cuit judge, without the intervention of a jury, and re-
sulted in a verdict in favor of the plaintiff for $10 (as
nominal damages) and the costs of the cause.

The defendant railway company appealed to the
court of civil appeals, and later the plaintiff below
filed the record for a writ of error in the court of civil
appeals, and the case was there heard upon the assign-
ments of error by both parties.

Upon the trial of the case in the circuit court, the
trial judge made and filed a special written finding of
facts, upon request of the railway company, which
finding of facts was made a part of the record, and,
so far as necessary to be quoted in order to present the
questions before this court, is as follows:

"The plaintiff was a physician of high professional
standing and reputation, and had been practicing his
profession in Knoxville, Tennessee, for the past twen-

ty-six years; that he was very busy professionally, and was, at the time of the matters complained of, attending very sick patients in and near Knoxville, Tennessee; that on March 28, 1912, was called to Clinton, Tennessee, and went there on one of defendant's trains, leaving Knoxville late in the afternoon of said date; that he remained at Clinton overnight, expecting to return to Knoxville the following morning, March 29th, on defendant's regularly scheduled and advertised train No. 112, run by defendant for the accommodation of local travel, said train being due to leave Clinton at 5:45 a. m.; that plaintiff went to the depot at Clinton in time to meet said train, and upon arriving at the depot was told by the depot agent, or person in charge, that said train was an hour and a half late, at which plaintiff expressed regret, because of the delay it would cause him in arriving at Knoxville, in view of the fact that he had some important engagements in Knoxville to meet early that morning; that said depot agent thereupon told plaintiff that a detoured train from Chattanooga would pass Clinton about the time No. 112 was regularly scheduled to pass there, but that he, said depot agent, could not sell plaintiff a ticket for said detoured train, it being contrary to the rules of said company to do so, but thought the conductor in charge of said detoured train would carry plaintiff thereon to Knoxville, to which plaintiff replied he would board said train and see if the conductor would put him off; that said detoured train stopped at both Clinton and Knoxville; that when said

detoured train arrived and stopped at Clinton, plaintiff met the conductor coming from said train toward the depot, and plaintiff asked the said conductor if he would take him, plaintiff, to Knoxville, on said detoured train; that if he did not go on said train, he would miss some important engagements in Knoxville, to which said conductor replied, 'Get aboard,' which plaintiff did, taking a seat in a day coach half filled with passengers; that said conductor, upon returning to said train, asked plaintiff if he had a ticket, to which plaintiff replied he did not; that the agent had informed him that he could not sell tickets for that train; that plaintiff then and there told said conductor that he, plaintiff, would pay cash fare, to which said conductor replied that said train was not a regularly scheduled, but a detoured, train, and it would be a violation of the company's rules to carry plaintiff thereon, and politely told plaintiff that he would have to get off said train, which plaintiff did without refusal or resistance, but was somewhat angered for being thus refused transportation, and threatened to sue defendant company upon his arrival in Knoxville, which threat he carried out; that something was said by and between plaintiff and said conductor, as plaintiff was leaving the train, about the payment of extra fare, the conductor saying to plaintiff, 'You would object to paying fifteen cents extra,' or something to that effect, to which plaintiff replied, 'I would pay two or three fares to be taken to Knoxville on this train;' that plaintiff got off of said train before it started, and then bought

a ticket and came to Knoxville on the regular sched-
uled train No. 112, upon which he originally intended
coming, arriving in Knoxville about 9 o'clock a. m.,
something like two hours later than the regular sched-
uled time of the arrival of said train 'in Knoxville;
that plaintiff had some important professional engage-
ments in Knoxville for that morning, which he was not
able to keep or meet as early in the day as he could
and would have met them had he not been thus delayed,
but he met all of said engagements during the day,
though somewhat delayed; that plaintiff did not sus-
tain any financial loss or damage, nor did he suffer
any loss or damage to his professional character and
standing by reason of being thus refused transporta-
tion on said detoured train, and delay in making his
professional calls by reason of reaching Knoxville an
hour and a half or two hours later than the schedule
time for the arrival of said train No. 112; that there
was a rule, custom, or practice of defendant company,
at least said conductor was under orders not to carry
local passengers on detoured trains along the line of
road over which such trains are detoured, or rather
there was a rule, order, or custom of the company to
carry local passengers only upon regularly scheduled
and advertised trains provided for the accommodation
of local passengers or travel, and such depot agent
was under orders not to sell tickets to local travel
for passage on such detoured trains, or rather he was
under orders to sell only for trains duly and regularly
provided for local travel; that plaintiff was informed

Railroad v. McNabb.

and knew of the latter before and at the time he boarded said detoured train, and was advised of the former by said conductor before and at the time plaintiff was asked to and did get off of said train, before said train left Clinton; that plaintiff was fully and duly advised that he could not be carried as a passenger on said detoured train and got off of same upon request of conductor, which request was made in a quiet and gentlemanly manner. . . .

"The proof fails to show that plaintiff sustained any loss or damage, either financially or to his professional character and standing, by reason of the matters complained of, and that the proof further fails to show a proper case for exemplary damages."

The opinion of the circuit judge upon the facts found was, in effect, that, although the railway company had a right to make and enforce a rule forbidding local passengers to travel on such detoured trains as that involved in this case, the enforcement of such rule should be modified to meet conditions and circumstances which might arise in the course of the performance of the duty which the railway company, as a common carrier, owed to the traveling public, and that, inasmuch as the local passenger train between Clinton and Knoxville was two hours late, it was the duty of the railway company, if reasonably possible to do so, to carry plaintiff on any other of its passenger trains, stopping at both Clinton and Knoxville, and that although the rule forbidding local passengers to travel on detoured trains was ordinarily reasonable, it became

Railroad v. McNabb.

unreasonable in case the regularly provided and sched-
uled train for local travel was not run in reason-
able compliance with its schedule, and that the rule with
reference to detoured trains was improperly invoked in
the present case. The circuit judge said:

"Plaintiff could and should have been carried as a
passenger on said train, and he having boarded same
without a ticket, said depot agent having advised him
that tickets could not be sold for said train, and, after
boarding same, having offered to pay cash fare, or
showing his willingness and readiness to do so, he
thereby became a passenger on said train, and entitled
to be carried as such, and was wrongfully ejected there-
from."

The court of civil appeals agreed with the trial judge
that:

(1) The railway company was not liable in damages
to plaintiff below on account of the delay of two hours
in the local passenger train from Clinton to Knoxville;
it not appearing that the delay was caused by negli-
gence of the railway company.

(2) The rule of the railway company that it would
not carry any local passengers on detoured trains (and
incidentally its rule forbidding the depot agent at Clin-
ton to sell tickets for such trains) was a reasonable
rule, and one which the railway company had a right
to make and enforce.

But in the majority opinion of the court of civil ap-
peals, it is said, viz.:

"We are of opinion that there can be no recovery if the defendant refused to carry the plaintiff on said special or detoured train. This train was not operated for the carriage of local passengers. This fact plaintiff knew when he boarded it. We know of no rule of law that required the defendant to carry the plaintiff on this special train. We think the rule or regulation of the company was a reasonable one. We think it is reasonably clear from the finding of facts—at least, it is inferable—that the conductor was laboring under the mistaken belief that the plaintiff had a ticket entitling him to passage on said train when he told him to get aboard. When he ascertained that the plaintiff did not hold a ticket for said train, he told him that he would have to get off. We are of opinion that the plaintiff was never in fact accepted as a passenger on said train, and the relation of passenger and carrier was never established."

The judgment of the circuit court was therefore reversed, and the plaintiff's suit dismissed.

The minority of the court of civil appeals held to the opinion that under the facts the relation of passenger and carrier was established, and could not be severed by the conductor without subjecting the railway company to liability. However, they were of opinion that the plaintiff was entitled to recover only nominal damages, and that the judgment of the circuit court should be affirmed.

We think the conclusion of the majority of the court of civil appeals is correct.

Railroad companies may adopt, and in a lawful and proper manner enforce, reasonable rules and regulations, not in contravention of any law or public policy, for the carriage of freight and passengers and the transaction of their business generally. *Railroad* v. *Turner,* 100 Tenn., 213, 47 S. W., 223, and cases there cited.

The general principles to be applied in determining whether or not the relation of passenger and carrier existed are stated in *Webster* v. *Fitchburg R. R. Co.,* 161 Mass., 298, 37 N. E., 165, 24 L. R. A., 521, and repeated in the case of *Hogner* v. *Boston Elevated Ry. Co.,* 198 Mass., 260, 269, 84 N. E., 464, 465, 15 L. R. A. (N. S.), 960, 962, as follows, to wit:

"One becomes a passenger on a railroad when he puts himself into the care of the railroad company to be transported under a contract, and is received and accepted as a passenger, by the company. There is hardly ever any formal act of delivery of one's person into the care of the carrier, or of acceptance by the carrier of one who presents himself for transportation, and so the existence of the relation of passenger and carrier is commonly to be implied from circumstances. These circumstances must be such as to warrant an implication that the one has offered himself to be carried on a trip about to be made, and that the other has accepted his offer, and has received him to be properly cared for. . . . A railroad company holds itself out as ready to receive as passengers all persons who present themselves in a proper condition, and in a

proper manner, at the proper place, to be carried. It invites everybody to come who is willing to be governed by its rules and regulations. In a case like this, the question is whether the person has presented himself in readiness to be carried under such circumstances in reference to time, place, manner, and condition that the railroad company must be deemed to have accepted him as a passenger.''

It is a necessary corollary to the rule that a railway company may make and enforce reasonable rules and regulations with reference to the reception of persons as passengers; that the railway company may decline to receive or accept as a passenger a person who refuses or fails to comply with such reasonable rules and regulations of the railroad company.

It is well established that one who procures a ticket and procures passage upon a railroad train by means of fraudulent misrepresentations does not occupy the status of a passenger, but is a trespasser. *Fitzmaurice v. N. Y. & N. H. & Hartford R. R. Co.*, 192 Mass., 159, 78 N. E., 418, 6 L. R. A. (N. S.), 1146, 116 Am. St. Rep., 236, 7 Ann. Cas., 586, and cases there cited.

In the present case, it appears that when the conductor told Dr. McNabb to ''get aboard,'' he, the conductor, was under the impression that Dr. McNabb had procured a ticket for passage on that train. This, however, was not the case, and Dr. McNabb not only knew that he had no ticket, but had been warned by the station agent that it was contrary to the rules of the company for local passengers to ride on that particular

train; but, notwithstanding such knowledge on his part, Dr. McNabb carried out the purpose, theretofore announced by him, that he "would board said train and see if the conductor would put him off."

Although Dr. McNabb was not guilty of any fraudulent misrepresentation, it is manifest that the conductor, in the first instance, expressed a willingness to accept him as a passenger *under a mistake of fact,* to wit, that a ticket had been sold to McNabb for passage on that train; but before the train left the station, and before it moved from the place where McNabb boarded it, the conductor discovered his mistake, and thereupon politely requested McNabb to leave the train, which he did without resistance.

We are of the opinion that, under the facts found by the trial judge, the railway company had a right to decline to accept Dr. McNabb as a passenger on the train in question, and that the legal relations of the parties were not changed by the conductor's invitation to McNabb to "get aboard," made as it was under a mistake of fact.

The judgment of the court of civil appeals will be affirmed.