SOUTHERN RAILWAY et al. v. DEWEY CANTRELL.

Eastern Section. September 3, 1927.

Certiorari denied by Supreme Court, October 22, 1927.

1. **Railroads. Pleading. Declaration held to state a case of joint liability.**
    In an action for damages for personal injuries against two railroads where the declaration stated that they jointly maintained a depot, waiting rooms, etc. held to state a joint cause of action against both railroads.

2. **Railroads. Railroads maintaining a joint depot are each liable for injuries sustained therein.**
    Where two railroads maintained a joint depot held it was there joint obligation to safely maintain the depot and approaches, and if the person was injured while lawfully there, under relations raising the obligation with either, both would be liable.

3. **Railroads. Joint responsibility is limited to premises used jointly.**
    Where two railroads were not partners and used only a part of their respective premises jointly, held that one suing the railroads jointly to .recover for an injury must show that his injury occurred at a place covered by the joint use.

4. **Railroads. Railroads must properly maintain all necessary approaches to their station.**
    Where two railroads used a depot jointly, held that there was a joint obligation to all persons lawfully using the depot and all necessary approaches to the depot.

5. **Railroads. Passengers. Party coming to a station when it was closed held not to acquire the status of a passenger.**
    Where a railroad had regular hours at which time its station was closed between trains and a person intending to become a passenger came to the station during the time that the station was closed, held that by so doing he did not acquire the status of a passenger.

6. **Railroads. Negligence. A railroad owes no duty to protect a licensee.**
    A railway company is under no obligation to protect a person on the track under an implied license to use the right-of-way by taking steps to prevent harm to such persons, unless it has so acted as to mislead him; but the extent of its duty is not to injure him wantonly or wilfully.

7. **Railroads.** There is no obligation on a railroad to furnish toilet facilities to anyone other than passengers.

A railroad is required to furnish toilet facilities for its employees and passengers but not for mere licensee upon its property.

8. **Railroads. Evidence.** Evidence held not to show railroad liable for plaintiff's injury.

In an action to recover for personal injuries caused by falling against a moving train because of a defect in an old platform where the evidence showed that the plaintiff, seeking a toilet, had gone to an old building which was sometimes used for that purpose and returning to the joint depot of the defendants, had fallen through the platform, held that the evidence showed that the party was not a passenger and therefore the railroads owed him no duty to furnish toilet facilities, and that the platform on which he was walking was not a natural approach to the station and therefore the railroads owed no duty to the plaintiff to keep it in repair and that the plaintiff's cause of action must fail.

9. **Trial. Instructions.** Instruction assuming facts not proved by evidence is erroneous.

Instruction set out in opinion held erroneous as assuming facts not covered by the evidence.

Appeal from Circuit Court, Hamilton County; Hon. Oscar Yarnell, Judge.

Reversed and dismissed.

R. B. Cooke, and Brown and Spurlock, of Chattanooga, for plaintiffs in error.

F. G. Redwine, and Ford & Bryan, of Chattanooga, for defendant in error.

SNODGRASS, J. This is an action for damages for personal injuries, sustained by Dewey Cantrell, by falling against the side of a passing freight train from an old depot platform in the yards of the Southern Railway in Stevenson, Alabama, on the night of the 20th of February, 1925. At the time he was returning from said yards of the Southern Railway to the passenger depot that was maintained jointly by the Southern and the Nashville, Chattanooga & St. Louis Railway some distance farther away. He had gone to an old cotton platform in the rear of this old freight depot to answer a call of nature, which had become insistant while he was at the joint passenger depot. In going to this place the plaintiff below (and for convenience the parties will be referred to as they were styled below) had passed around this old depot entirely on the ground, to the said old platform, but in returning he walked around to the front of and was using the platform of the old depot as a part of the way he was returning. As stated, a freight train was passing as he went upon the platform, and he had not proceeded far when he stepped into a hole near the front edge of the platform upon which he was walking, occasioned by the rotting away of one of the planks at that place, and was precipitated against the train, receiving severe injuries. His back was broken and he was otherwise bruised and injured, rendered uncon-

scious, and at the time of the trial was encased in a plaster cast. He was thus crippled for life.

He sued both roads for the sum of $25,000, maintaining that they were jointly liable to him for negligently failing to keep this old platform in repair. The Southern Railway filed a demurrer to this declaration, which was overruled. There were pleas of not guilty filed by both defendants, and the cause went to trial before the judge and jury, when the latter returned their verdict in favor of the plaintiff against both defendants, fixing his damages in the sum of $7,000, for which judgment was rendered. The defendants made separate motions for a new trial, which were overruled, and both have appealed and assigned errors. The Southern Railway has made eight assignments of error, and the other defendant has also made eight.

The first three assignments of the Southern Railway relate to alleged errors of the court in overruling its demurrer. We think the demurrer was properly overruled.

As we construe the declaration it made a case of joint liability. It alleged that they jointly maintained the depot; that it was the duty of defendants to have and maintain depot conveniences, such as toilets, waiting rooms, seats and heat, such as are usual and customary to be provided and maintained by like railway systems engaged in the character of business that defendants were on said date; that on the night of the 20th of February, 1925 the plaintiff went to the joint depot of defendants for the purpose of becoming a passenger upon one of the passenger trains being operated by the Nashville, Chattanooga & St. Louis Railway; . . . that being unable to use the toilet he sought information of defendants' employees, (meaning of course employees of both roads) and said employees . . . informed plaintiff he could go to the back of a large building which had been in use as defendant's depot, where he could find a place for his purpose, and "plaintiff has since been informed and avers" that this place was and had been in general use by defendants' passengers, and anyone else having occasion to visit said depot when they desired to go to such place under the circumstances stated; that this old depot or building of defendants was located close to the station or depot then and now in use by defendants, and the premises thereof all belonged and has ever since been the property of defendants, or all of which buildings, depots and premises were used by defendants, and were all under defendants' control and management, and defendants exercised the right of possession, and undertook to keep the same in repair as it was their duty to do; and it was averred that it therefore became and was the duty of defendants to keep said building, the porches and platform and steps thereof in a reasonably safe condition and state of repair, as de-

fendants knew and had actual knowledge, or could have had such knowledge by the exercise of ordinary care, that people coming to said depot to take defendants' trains and the people generally having occasion to visit said depot as plaintiff did, used the porches, steps and platform of the old depot building as a walk way from and to their present depot, in going to and from the place at the rear of the defendants' old depot building, now in some sort of use by defendants in the operation of their lines of railway, for the purposes desired by the plaintiff at the time he went to the rear of said old depot building.

It was further averred that this place so used by anyone having occasion to visit said depot was located on defendants' station premises, and where plaintiff went to answer the call of nature has been used by the people generally for many years, and such usage had become a well recognized custom of long standing, and defendants knew of such custom, or could have so known by the exercise of ordinary care, and defendants knew or could have known by ordinary care that said platform and porches of said building were in customary use by those coming to their depot, in order to reach the place where plaintiff had gone for the purposes aforesaid, and in fact such way of travel and such place of accommodation were the only means provided by defendants under the circumstances stated.

Attention is called to an averment also in the next to the last paragraph, as follows:

"Said building and its porch or platform was maintained by defendants in its dangerous and defective condition as aforesaid, when defendants knew or could have known by the exercise of due care that said porch or platform was in general use by the public, and by those intending to become such passengers in going to and from their depot or station, and was in general use," etc., etc.

It was further averred: Defendants therefore wrongfully and negligently failed to keep said buildings in repair in this; the porch or platform, which was of considerable length, and was constructed parallel with and close to the track and roadbed of defendant Southern Railway was in a rotten, decayed and dilapidated condition, some of the planks forming said porch were gone, leaving spaces or openings in said porch, and some of the plank forming said depot platform were so rotten that the weight of anyone would cause them to fall through the porch platform, all of which dangerous condition defendants knew or could have known as aforesaid, but which dangers plaintiff did not know, as he was a stranger in said village, and the night was dark; the defendants having negligently failed on said night to have the depot and depot premises and said buildings lighted so as to enable plaintiff to discover the dangerous condition of this porch or the platform of the old building.

Without undertaking to elaborate the declaration further, we think it made a case of joint obligation of both defendants in the particulars mentioned, that is to say, that the plaintiff, intending to become a passenger on train soon to be due, went to the depot, and finding their facilities locked, was directed by the defendants' employees to this old platform behind the old freight depot as a place that passengers used under similar circumstances; that he went there to the place thus provided and maintained by both roads, and thus by their express and implied invitation, alleging that it was the only place used or provided under the circumstances, and on returning by the usual and well known route so provided over the platform of the old freight depot, he fell into the hole, which they should not have allowed to remain there, and was thus injured. And, as indicated, it is also alleged that said platform was in general use by the public and by those intending to become such passengers in going to and from their depot or station.

The first assignment of the Southern Railway must be overruled, because we think, under the facts as alleged by this declaration, it is immaterial whether he was intending to be a passenger of the Southern or not. If he was injured at a place which it was their joint obligation to safely maintain as a general approach to their joint station, for persons lawfully there, under relations raising the obligation with either, both would be liable.

"CARRIER'S USING SAME STATION FACILITIES:

"Two or more companies using the same station facilities are all under the duty of keeping the premises in a safe condition and free from obstructions or dangerous instrumentalities. One of such companies is under the same duty as to passengers using the premises in connection with the other roads that it owes to its own passengers, and is bound to operate its trains with the same due regard for their safety; and such a company is liable to its own passengers for injuries caused by the negligence of the other company. A carrier using a union depot is liable for a negligent failure to keep it or the other approaches thereto in a safe condition, although the premises are under the control of a receiver of the depot company.

"A Union Depot Company, which undertakes to provide common terminal facilities for passenger carriers owes to passengers and their attendants the duty of keeping the station and its facilities in a proper condition for their safety; and, where it undertakes to direct passengers to their proper trains, it is bound to see that this duty is performed in a proper manner, and it relies on train employees so to direct passengers, it is liable for injury caused to a passenger or his attendant in follow-

ing the directions of such employee.'' Corpus Juris, sec. 1319, p. 882.

The declaration does not show on its face that the old depot was not part of the station furnished by defendants for use of the passengers and those intending to become passengers, as claimed under the second assignment. On the contrary, for the purposes of walking to the place of retirement it is claimed to be a part of the station facilities of both, and also as a way used to and from the station. It was also a question for the proof to determine as to whether or not the platform was a part of the usual walk way, or whether or not the plaintiff was a trespasser in going upon it.

The 4th assignment of the Southern Railway is, that the court erred in not directing a verdict in its favor, because it was said there was no evidence to support the verdict against it.. And this also is the first assignment of the other defendant. These two assignments being next in order, test the merits of the case and necessitate a statement of the proof.

Two blueprints and a number of photographs show the location of the buildings and tracks at Stevenson. There is no dispute about their correctness. The tracks and right of way of the two defendants come together at this point. Those of the N. C. & St. L. Railway run to the northwest or to the right in the direction of Cowan and Nashville; those of the Southern bearing to the left toward Memphis. The joint passenger station is on the dividing line between the properties of the two defendants where their two tracks come together. The hotel is on the same dividing line and about twenty feet north of the passenger station. Each of the defendants has three tracks on the opposite sides of the station, those of the Southern Railway being on the east or left side going north. The space around the passenger station and the hotel is paved with concrete and lighted at night. The two defendants have no toilets inside the passenger station, but maintain two each located on their respective right of way just north of the hotel building. The N. C. & St. L. Railway keeps one of its toilets locked with a key that is kept in the station, for the use of passengers while the station is open, but it must be taken from the plaintiff's proof that at the time he came to the station and was directed to this old platform place of retirement that these toilets were locked and the keys thereto not available. The freight station of the N. C. & St. L. Railway is located on the west side of its tracks, opposite the north end of the hotel and its toilets. These toilets do not appear on blueprints, except as marked in pencil on one of them, but all witnesses locate them just north of the hotel building. The old freight depot of the Southern Railway where plaintiff went and received the injury for which he sues is located on the east side of its tracks southwardly from the passenger station,

and on the property of the Southern Railway. It appears on both of the blueprints across from the passenger station, back toward Chattanooga.

Except for some nondescript occasional use the Southern Railway had abandoned this old freight depot in 1917, and at the time of the accident was doing what freight business it had at Stevenson through the freight depot of its co-defendant. The platform on the east or back side of this old building was about seven or eight feet above the ground. The one in front, or next to and parallel with the tracks of the Southern Railway is three feet above the ground. It was while walking along this platform that the plaintiff fell, after having gone the other way around to the old platform in its rear, and while returning over the front platform of the old freight depot, as he alleges, to the station. The home of his parents was at Grutli, in Grundy county, Tennessee. He went to Stevenson on the 20th of February, 1925 to take Train No. 4 of the N. C. & St. Louis Railway to Cowan. He had walked on that day from Richard City, in Marion county, Tenn., to Stevenson, where he arrived in the afternoon between four-thirty and five o'clock. "Q. What time did you go to the depot?" "A. I don't say that, I got to town between four-thirty and five." He stated that he did not know what time he was at the depot first; it was sometime between the time he got to town and when he went to supper, about six-thirty or seven o'clock; that he stayed there the first time only a short time, and though it appears to have been available he does not seem to have asked for or to have gotten any information at that time, but to have left and gone up in town. It was the purpose of plaintiff to take train No. 4 of the N. C. & St. L. Railway, as stated, to proceed to his destination. He had lived in Bridgeport for awhile previous to that and knew that the train passed through Bridgeport at about eleven o'clock. This was a few months before he got hurt, but he did not know whether or not the schedule had been changed, but had heard that it had been, and he went to the depot to inquire of the agent when his train would run, intending to take it of course when it did run, but was unable to find the agent, and did not inquire of any other or look for a billboard. He had nothing to do, no particular place to go, and he got with some friends and had supper and was around over town for a few minutes, and then went down to the station again about eight-thirty. He said he went back to the ticket window to make inquiries, but the window was closed; that he then knocked on the window, but there was no one in the office; that he could not arouse anyone in the ticket office, nor did he learn anything about when his train would pass through there. He said he had money in his pocket when he went there between six and nine o'clock to buy a ticket and pay for his transportation over

the Nashville, Chattanooga & St. Louis Railway to Cowan, and that he presented himself there at the ticket office for the purpose of getting himself a ticket, and that he was able to have fulfilled his purpose of buying himself a ticket. The balance of the plaintiff's testimony up to the time of the injury is as follows:

"Q. Where did you go, tell the jury what you did in trying to find the ticket agent—did you go to the other end of the depot or not, the other end of the office? A. No, the other end was the colored waiting room and I did not go in there.

"Q. About how long were you there making an effort to have a conversation with the ticket agent about your ticket or about the schedule of your train and you were making inquiry as to where the ticket agent was and whether he had come back? A. Well, a short time.

"Q. About how long would you say? A. Oh, probably ten minutes.

"Q. Before you made any inquiry? A. Yes sir.

"Q. What information did you get as to whether the agent had gone for the night or what time he would be back? A. There was a man told me whom I supposed to be working for the Railroad Company, a colored man, told me that the agent had gone and would be back just before train time.

"Q. Did you have occasion to hunt for a toilet? A. Yes sir.

"Q. Did you make any inquiry as to where you could find one? A. Yes sir.

"Q. Who did you ask? A. I asked that same colored man and another white man.

"Q. What information did you get as to the toilets there? A. They said—

"Mr. Brown: If your honor please, unless it is shown that these people of whom he inquired were employed by the railroad, I object to the testimony.

"Court: Information given by just a bystander would not be competent."

His examination was resumed.

"Q. Did you or not have any information there that the key to the toilet was with the ticket agent? A. Yes sir.

"Mr. Brown: We object to that unless the conversation was with someone connected with the railroad.

"Court: Yes, we will sustain the objection to that.

"Q. Did you make an effort to locate the toilet there in the depot? A. Yes sir.

"Q. Could you find any? A. No sir.

"Q. State whether or not you saw one that was fastened up? A. Yes sir.

(Objected to because leading)

"Q.   Did you see one there or not?   A.   Yes sir.

"Q.   Was it open or closed?   A.   Closed.

"Q.   Could you get in it?   A.   No sir.

"Q.   Were you or not compelled to have some place to hide? A.   Yes sir.

"Q.   State whether or not your bowels were about to move? A.   They were.

"Q.   Did you get information as to where to go to?   A.   Yes sir.

"Q.   Did you go to that place?   A.   Yes sir.

"Q.   Tell the jury where you went to in reference to this passenger depot, how you traveled to this place and what kind of a place you found?   A.   I went across the track behind the old Southern freight depot, to an old platform behind the Southern freight depot.

"Q.   Did you find the place?   A.   Yes sir.

"Q.   State whether or not when you went and found this place you struck a match?   A.   No sir.

"Q.   You did not?   A.   No sir.

"Q.   Was there anybody else using that place when you got there?   A.   Yes sir.

"Q.   One or more?   A.   There were two men in the place.

"Q.   Can you describe that place to the jury, how big a place was it?   A.   Well, it was a great big place, I guess thirty feet square probably.

"Q.   Now, the side of this place, the side nearest to the Southern freight depot, was it high off of the ground or was it down close to the ground?   A.   One end was pretty close to the ground but the other end was as high as my head.

"Q.   Where was it the highest, was it facing east, towards the cedar mill?   A.   Yes sir.

"Q.   When you got through tell the jury what you did, where you expected to go and what your purpose was and tell the jury all about it?   A.   Well, I had no place to go except back to the depot and get information about my train and get me a ticket.

"Q.   Had you secured your ticket at that time?   A.   No sir.

"Q.   Had you ever seen the ticket agent at that time?   A. No sir.

"Q.   How many times had you made an effort to talk with him in reference to the schedule of your train and whether the train was on time or not?   A.   I had made two efforts.

"Q.   Now, when you started back to the depot, tell the jury how you proceeded to go back to the depot?   A.   Well, I was about even with the Chattanooga end of the old Southern freight

depot; I walked in front of the depot to where I come to a pair of steps that lead upon the platform; there was a train passing at the time and I walked upon the platform and started towards the passenger depot.

"Q. And then what happened? A. I stepped into a hole in that platform and fell into that moving train.

"Q. State whether or not that train was passing right along parallel with the platform on which you were walking? A. Yes, it was.

"Q. About how far after you got upon the platform did you move until you pitched over into this train? A. About a step or two.

"Q. On what part of the platform were you walking? A. It was as near the middle as I could tell.

"Q. As you remember? A. Yes sir.

"Q. Were you knocked unconscious that night. A. Yes sir.

"Q. What was the first thing that you remember after you fell over in there between the platform and the train and into the train—do you remember anything that night? A. No sir."

The defendant, Nashville, Chattanooga & St. Louis Railway, proved without contradiction or controversy, that by its regular established schedule its train No. 4 left Chattanooga at one thirty-five a. m., and arrived at Stevenson, Alabama at two-fifty a. m. that this schedule had been in effect for more than ten years and was shown on the billboard at Stevenson, where it was lighted and visible at night. The passenger station at Stevenson was by regulation of the company kept open and the night agent on duty from six to eight o'clock, p. m., and from ten o'clock p. m. to four o'clock, a. m. At the time of this second appearance of the plaintiff at the depot it was closed, and under its regulation defendant was not required to be there until ten o'clock, which would have been in ample time for the plaintiff to have obtained all information about his train and have acquired his ticket and become a passenger. The old depot building where the plaintiff went had never been used by the Nashville, Chattanooga & St. Louis Railway, and never in its possession or control, and save for some nondescript use by the Southern Railway had been abandoned by it for a number of years.

These two railroads were not partners, and therefore their joint responsibility is limited to the premises on which an obligation would arise because of a joint use. The joint use did not extend to the whole of their respective yards, therefore, to effect a responsibility of both, the injury must have occurred at a place covered by the joint use. In other words, in this instance, a place which both were required to safely maintain as an adjunct of the station, to which

both invited people to come for the purpose of transacting legitimate business. Such a joint obligation would therefore extend to all necessary approaches to that station, as well as to facilities that were on the joint premises of which they were tenants in common. Even though the old place of retirement to which the plaintiff went, and from which he was returning when injured, may have been entirely on the premises of the Southern Railway, if as a matter of fact it was used by both as a place of retirement for their passengers, it would be a part of the joint premises to this extent, and the way thereto their joint obligation to safely maintain for those to whom such duty would arise. But the obligation to maintain a general and necessary approach to a station would arise differently than would such obligation to maintain a way to a toilet kept on the yards for passengers. The first would exist always for the protection of those coming into the station for any legitimate purpose and returning therefrom to their necessary place. The latter would only arise after the individual had acquired the status of a passenger. Defendants insist that the declaration can claim only the status of an obligation that would be due a passenger, but we think that while it makes such a case involving the use of toilet facilities, it makes also the case of an injury on an alleged general approach to the station, upon which he came to return to the station for a lawful purpose, and in that event it would be immaterial whether he had the status of a passenger or not.

Without regard, therefore, to the special and limited character of the way, to support a recovery the proof would have to show that the place where he was injured was on such general and necessary approach. Coming to the station at a time when defendants were authorized under their reasonable regulations to have it closed, (Kyle v. Chicago, etc., Ry., 182 Fed., 613; Railroad Co. v. McNabb, 130 Tenn., 197-206) we do not think the plaintiff had acquired the status of a passenger. Indeed it is not claimed for plaintiff that he had, and this concession we think should relieve the case of any other question, since we do not think the obligation to furnish toilet facilities and ways thereto existed in advance of such relationship. But it is insisted by the plaintiff that it does, or at least that they owed him the duty of making a safe general approach, and that it was upon such an one that he was injured. If this should be the case it would not be material as to the toilet except as a historical recitation of how he came to be upon the platform, for, notwithstanding he may have been a trespasser previously thereto, when he came upon this general approach, if such it was, with either purpose, the obligation would arise to make it reasonably safe for such purposes, if it was so used. By a tight squeeze we think the declaration will bear this construction, and the question would be as to whether or

not the proof shows that the platform of this old depot was maintained by these roads as a general approach to their depot for persons having business with them. Plaintiff relies entirely upon circumstances to establish this point, and we think, viewing the case as a whole, they fall far short of authorizing the jury to make this inference. The railroads of course owed no duty to furnish asylum to the plaintiff, but only such reasonable facilities as to enable him to inform himself and to safely take passage upon their train, which was not due until some hours following his attempted inquiry.

The proof is the old freight depot and the cotton platform in the rear is entirely in the freight yards of the Southern, and that the Nashville & Chattanooga road does not own or have any control over them. The line dividing the properties of each runs through the center of the passenger station used by both; that both have and maintain toilets on their rights of way, which are not available when the station is closed for the reception of passengers, as it was at this time, but which is available for passengers and maintained for such when the station is open for the transaction of business. As stated, it was sought to show by circumstances that the place behind the old freight depot and under the old cotton platform still further behind, and the way thereto, was joint premises for such purposes, or at least that the old platform was maintained by defendants as a part of the way used by the public in going to and from their depot, but we do not think the circumstances proven are such as to authorize the jury to infer that such a way was maintained for either purpose. To begin with, this joint station was in or fronting the town or city of Stevenson, Alabama. While the station and its immediate servants were joint, both roads provided toilets on their right of way near the hotel for the needs of their business and passengers. We think the regulations concerning the arrival and departure of trains and of attendance upon the station were reasonable, and under the circumstances of this case to keep their toilets locked was not only reasonable, but necessary, to keep them from being appropriated and rendered unfit by a public and general use, notoriously contemptuous of decency and propriety, and which were shown to have destroyed such facilities there that had been left open. The old freight depot and cotton platform in the more remote yards of the Southern, though inherently notifying people that they were kept and used for other purposes, were in the night time, and possibly times in the day, used by whoever happened to be upon these yards who, lacking other facilities, felt obliged or inclined to use them, in passing from any direction. And it was shown that even passengers alighting from trains in a few instances had used them, and possibly had gone from the depot over in that direction and returned, whether passengers or not, and there were signs that it had been so used for years, and that the Southern had cleaned out these places of their

filthy accumulations. Nevertheless we think the evidence fails to show or to warrant any conclusion that these places were maintained by them as privies, or that they either directly or by circumstances ever invited their passengers to use them, which the Southern Railroad had erected and used for other purposes wholly inimical to having them devoted to the filthy uses that would have a tendency rather to interfere with their legitimate use or employment. How the Southern Railway could have protected itself from such imposition without tearing down these places, erected for other purposes, or keeping someone constantly on guard there, is not perceived, but we think there is no circumstance proven under which the jury would have been authorized to conclude either that these wide open spaces around their old freight depot platform were a way maintained by them either as a general approach to their station, or that both or either of the defendants maintained either of these old places in the Southern yards as a privy, to which they invited their passengers. At least it could only be assumed against the Southern Railway that it licensed such use, and for the N. C. & St. L. Railway that it acquiesced in such use, which in neither event would make them liable. In Thompson on Negligence, Vol. 2, page 422, and in section 1722, as to the duty owed to licensees, it is represented that:

"A fair expression of this doctrine is, that a railway company is under no obligation to protect a person on the track under an implied license to use the right of way, by taking steps to prevent harm to such persons, unless it has so acted as to mislead him; but the extent of its duty is not to injure him wantonly or wilfully; and that one who enters the yard of a railway company under a mere license, assumes the risk of all dangers, which are caused by a natural and proper use of the tracks and trains. Other courts express the doctrine differently, by saying that the mere fact that persons have frequently trespassed upon a railroad track, and that the company has resorted to no means to stop such trespasses, does not amount to a permission or license to use the track as a footpath.

"The doctrine is better expressed by saying that an acquiescence in such a continued series of trespasses does not amount to an invitation on the part of the company for the public so to trespass, such as puts the company under special obligation to such trespassers."

This doctrine is approved in the case of N. C. & St. L. Railway v. Lovejoy, 138 Tenn., 492-506, where it is said that:

"A railroad track is not constructed as a walk way for pedestrians, and ordinarily it is not incumbent upon a railroad company to keep its track in a safe condition for persons to walk upon. It has been said that a railroad track is in itself an ad-

5 T. A.—44.

monition of danger. The fact that persons are accustomed to walk upon a railroad track with the mere passive acquiescence or permission of the railroad company, is not sufficient to constitute an invitation. There must be some evidence of the inducement to use the way on the part of the railway company or there must be some indication that the place or way was designed by the railway company for persons to walk upon."

There is much more of illustration in this case, but what is stated we think is sufficient. It is and should be manifest that the old freight depot platform was not constructed as a part of a general approach to the new station, nor as a part of a way to any supposed place of retirement maintained by defendants, notwithstanding its general direction may have been somewhat in line with the new station and the old cotton platform. Its first and primary import was that it had a limited use, serving business at that old freight depot, and the primary obligation of the railroad was to maintain it safe for this purpose only, if it was then so used as a freight depot. There is nothing in the record to show that it was ever intended as a general approach to the new station, or as a private way of defendants to the platform back of it, or to the old cotton platform. The fact that people were accustomed to walk upon it in going from these places, or anywhere else in the yards, or elsewhere to the new station, with the mere passive acquiescence or permission of the said railroad company, is not sufficient to constitute an invitation. There is no proof that the person or persons who directed the plaintiff to this place had any authoritative connection with the railroads. What mutual interest of the roads and passengers could have been served by maintaining these places is not perceived, especially of the Southern Railway. The interests to which the places were or had been put by the Southern Railway was calculated to be positively injured by the use the public was making of it, and entailed needless expense in cleaning it out, while both roads had provided other facilities to serve their limited requirements in that respect. In Bennett v. Railroad, 102 U. S., page 276, discussing this question of implied invitation, it was said: "Invitation is inferred where it is a common interest or mutual advantage, while a license is inferred where the object is a mere pleasure or benefit of the person using it."

In the exercise of their reasonable regulations as to attendance upon the depot, with the published schedule of the trains on the door, they were lawfully absent when the plaintiff presented himself the second time for any purpose. His train was not due until two-forty a. m. He had acquired no status as a passenger, and therefore no obligation existed at the time to furnish him a toilet. It was not shown that he was invited to the old cotton platform by either of the defendants. His essay into the yards under the circumstances must be regarded as at his own risk. In returning to the station the

proof does not show that he was injured at a place provided by the defendants as a general approach thereto, even if the declaration can by a close, even strained construction, be considered as covering such case. In the case of DeGlopper v. Railway & Light Co., 15 Cates, 643, it is said:

"It is incumbent upon the plaintiff to establish by a preponderance of the testimony three propositions: :

"1. A duty which defendant owes to him.

"2. A negligent breach of that duty.

"3. Injuries received thereby resulting proximately from a breach of that duty."

There was therefore no proof to sustain a verdict against either of the defendants, even though the plaintiff sustained severe and permanent injuries. The motion of each defendant for a directed verdict should have been sustained and the case dismissed, and their assignments of error to this effect which have been under discussion are sustained.

This has the effect of sustaining also the sixth assignment of the Southern Railway and the eighth assignment of the other defendant to the same effect.

The latter clause of the fifth assignment of the Southern Railway is not available here. The first clause of said assignment is too general, and is therefore overruled.

It is insisted, however, in the eleventh assignment, that the verdict is contrary to the following charge of the court:

"I charge you that if one not being a passenger goes out into the dark onto the property of the defendant Southern Railway Company to a place where he has not been expressly or impliedly invited, he assumes the risks incident to his act, and if injured, by falling into a hole, and against a moving train, the defendant would not be liable."

And again:

"If the evidence shows that the plaintiff went to Stevenson, Alabama, on or about the 20th day of February, 1925, for the purpose of becoming a passenger on the N. C. & St. L. Railway, and if he merely went to buy a ticket, that under those circumstances that he could not be considered a passenger on the Southern Railway."

We think the verdict is contrary to these instructions:

"The seventh assignment of the Southern Railway and the third assignment of the other defendant are identical. They are to the effect that the court erred in stating the allegation of the declaration to be that he went to the station for the purpose of taking passage upon a train that left this depot, was scheduled to leave there later, somewhere in the night, over the N. C. & St. L. Railroad; that while

at the depot for the purpose of taking passage upon its train, or while he was there for the purpose of ascertaining when the train left, or was due to leave there from Stevenson going toward his destination—that while he was in about the depot where they had provided a waiting room for passengers," etc., whereas according to the declaration, the plaintiff went to the station for the purpose of taking passage upon a train of the Nashville, Chattanooga & St. Louis, Railway, "soon to arrive at said station."

As indicated, while the proof does not show, and while it is not really claimed that he had acquired the status of a passenger, which would have entailed an obligation to furnish required toilet facilities—and more enlarged responsibility, yet we think also the declaration can be construed as covering a case of injury on a general approach, but which we have found that he has failed to substantiate in the proof. The assignment is therefore immaterial, and is overruled.

The eighth assignment of the Southern Railway and the fourth assignment of the other defendant are also identical. The excerpt complaint is set out in both said assignments, together with numbered specifications in which each think there was error.

In view of the length to which this opinion has already gone we will not discuss these assignments more than to say, as appears from the discussions already had, that there is reversible error in the instructions complained of, but it consisted principally in submitting the case to the jury at all. Most of the errors appearing, it would seem, would have been against the plaintiff, as the requirements of the proof are placed in the conjunctive; but stripped of what might be regarded as surplusage, it was error, we think, to charge, that if he was returning in the usual and ordinary way across that platform that was a part of the railroad property used by people having business there constantly and habitually, and that there was a hole in it, and he fell into it, while exercising reasonable care for his own safety, and was injured by being thrown against a train, then the court instructs you that it was the duty of the said railroad company, that they were under a legal duty to the plaintiff to keep the premises, the depot premises, including this platform that he was walking over, in a reasonable state of repair, and reasonable safe condition—"to exercise reasonable care to do that, and if they failed to do that, and the plaintiff exercising reasonable care for his own safety, fell into a hole and was injured, and that the said railroad company had allowed this platform to become rotten or some of the planks broken off, and there was a hole in it, and the plaintiff did not know about it, and he fell into that hole and was injured, by being thrown against a passing train, then the plaintiff would be entitled to recover for such injuries as he received against one or both of the defendants, as the proof may warrant." This was error, we think, because that platform might have been

used constantly and habitually by people who had business there at that particular depot, to whom the duty to keep the platform safe, if such persons had occasion to use it, yet this duty would not have extended to a trespasser, who was using it not to transact business with the company there at that depot, but to impose himself for no legitimate purpose, and who had no status as a passenger, nor as one upon a general approach to the passenger station. The character of use defined in the charge might have been altogether a proper use for business at that old freight depot, and persons using the platform may have gone to the other depot, but that falls far short of showing that it was a general approach from the outside to their joint station.

The ninth assignment of the Southern Railway and the fifth assignment of the other defendant are also identical as to another clause of the court's charge complained of, which is set out in said assignments. The alternative clause in said excerpt we think was erroneous, because it rightfully places the plaintiff in the Southern depot yards in quest of a toilet, simply by his having gone to the joint station to inquire when the train would pass there, during which interval they would only owe him the duty of seeing that the general approaches to their joint station, and such other places in the station as he might be expected to rightfully use for the purpose of such inquiry, were in condition to be used for that purpose.

We think the court was not in error in failing to give in charge the special request set out in the sixth assignment of the N. C. & St. L. Railway. This we think embodied a fair statement of the law, had the case by the declaration been confined to that of a passenger. It failed to take into consideration the other ground of the declaration, which we think the declaration covered, that of an inquirer.

For the same reason we think the court was not in error in refusing to give in charge the special request set out in the seventh assignment of the N. C. & St. L. Railway.

The court erred in not giving the special request contained in the tenth assignment of the Southern Railway in charge to the jury, but we think he did not err in refusing to direct a verdict in its favor for the reason of an alleged variance between the declaration and the proof, as set out in the twelfth assignment of this defendant.

We have not discussed at very great length the assignments that would only involve a several because we think, as indicated, that there is no proof to support the verdict, and the case is accordingly dismissed, at the cost of the plaintiff below.

Portrum and Thompson, JJ., concur.